UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CASTILLO GRAND LLC,

                Plaintiff                09 CV 7197 (RPP)

- against -

                                        **OPINION AND ORDER**

SHERATON OPERATING CORPORATION,

                Defendant.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

This matter comes before the Court on Defendant Sheraton Operating Corporation's ("Sheraton" or "Defendant") motion to dismiss for lack of subject matter jurisdiction and Defendant's motion to dismiss for improper venue. For the reasons discussed herein, this Court finds it lacks subject matter jurisdiction over this action and Defendant's motion to dismiss is granted.

**I. Procedural Background**

On July 21, 2006, Plaintiff Castillo Grand LLC ("Castillo" or "Plaintiff") filed a complaint against Sheraton (Case No. 06 CV 5526) alleging a variety of claims arising out of a management contract between Castillo and Sheraton related to the construction, promotion and management of a luxury hotel in Fort Lauderdale, Florida (the "First Action").[1] Since the filing of the First Action, the parties have engaged in extensive discovery and motion practice. On July 8, 2009, after nearly three years of litigation, this Court granted in part and denied in part Sheraton's motion for partial summary judgment.

---

[1] Only the procedural history necessary to the determination of the instant motion has been recited. For a fuller description of the procedural history and the facts of the case, see the Court's Opinion and Order dated July 8, 2009, granting in part and denying in part Sheraton's motion for partial summary judgment in the First Action.

On August 5, 2009, five weeks before this matter was scheduled to go to trial, Sheraton moved to dismiss the First Action for lack of subject matter jurisdiction. Federal court jurisdiction over the First Action was based solely on diversity of citizenship pursuant to 28 U.S.C. § 1332.[2] For diversity purposes, it is undisputed that Sheraton is a citizen of both Delaware and New York. In its amended complaint dated July 8, 2006 (the "First Action Complaint"), Castillo described itself as "a Florida limited liability company, with its principal place of business in Clearwater, Florida." (First Action Complaint ¶ 25.) For purposes of assessing diversity jurisdiction, an unincorporated entity such as a partnership or a limited liability company is deemed to be a citizen of all states of which its partners or members are citizens. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990); Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d Cir. 2000).

In its motion to dismiss the First Action, Sheraton argued that two indirect, part-owners of Castillo, Barbara Santangelo ("Santangelo") and Rochester Jacksonville Inc. ("RJI"), were citizens of New York and that therefore complete diversity was lacking. By letter dated August 7, 2009, Castillo did not oppose Sheraton's motion on the merits. Instead, counsel for Castillo proposed to cure the alleged diversity jurisdiction infirmity, re-file a new action between the same parties, alleging the same claims, and then proceed directly to trial on the previously-set trial date of September 8, 2009. (See August 7, 2009 Letter from Todd E. Soloway, attached to the Declaration of Eric P. Haas dated September 8, 2009 ("Haas Decl.") as Ex. 26 ("8/7/09 Letter").) In its letter and during a

---

[2] On August 5, 2009, Sheraton commenced an action against Castillo in New York State Supreme Court, Westchester County, asserting claims for breach of contract, unjust enrichment, contractual indemnification, and declaratory relief. Sheraton contends that New York State Supreme Court, Westchester County, is the only court of appropriate jurisdiction. (See Def. Mem. at 9-10.)

telephone conference with the Court on August 10, 2009, Castillo argued that Santangelo was a citizen of Florida but conceded that RJI was a New York corporation. (See id.; Transcript of August 10, 2009 teleconference, Haas Decl. Ex. 1 ("8/10/09 Tr.").) At the August 10, 2009 teleconference, the Court, based on Castillo's proposed course of action, did not adjourn the September 8, 2009 trial date. (8/10/09 Tr. at 21:9-10; 22:4-9.) Also at the August 10, 2009 teleconference, counsel for Sheraton indicated that, based on their research, any attempt by Castillo to cure the diversity defects would violate 28 U.S.C. § 1359. (Id. at 2:19-3:13; 11:4-8.) Counsel for Sheraton further indicated that it would need an opportunity to take discovery on the transactions Castillo planned to undertake in order to cure the diversity defects and that Sheraton would likely make a motion to dismiss any re-filed action, again for lack of subject matter jurisdiction. (Id. at 3:6-13; 10:25-11:8; 21:11-16; 23:12-17.)

By order dated August 13, 2009, the Court dismissed without prejudice the First Action for lack of subject matter jurisdiction. On August 14, 2009, Castillo commenced the instant action (Case No. 09 CV 7197) by filing a new complaint against Sheraton alleging the same claims contained in the First Action Complaint. On August 20, 2009, the Court issued an order in this action vacating all previously-set dates from the First Action, including the September 8, 2009 trial date, in light of the fact that the First Action had been dismissed. Between August 14, 2009 and September 8, 2009, Sheraton conducted discovery on the issue of subject matter jurisdiction, and on September 8, 2009, Sheraton filed the instant motions to dismiss for lack of subject matter jurisdiction based on lack of diversity and for improper venue pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. On September 25, 2009, Castillo filed

3

its opposition papers, and on October 5, 2009, Sheraton filed its reply papers. The Court heard argument from the parties on October 23, 2009.

## II. Discussion

In its motion, Sheraton argues first that at all times relevant to the First Action and this action, both Santangelo and RJI were citizens of New York. Sheraton further argues that at the time of filing of the First Action, Santangelo and RJI were both entities whose citizenship had to be assessed in order to determine the citizenship of Castillo for diversity purposes. Finally, Sheraton argues that between August 10 and August 14, 2009, Castillo attempted to eliminate the indirect ownership interests of Santangelo and RJI. Because these transactions were undertaken for the sole purpose of creating federal diversity jurisdiction where no such jurisdiction existed before, Sheraton argues that Castillo's reorganization of its citizenship violated 28 U.S.C. § 1359 and this Court therefore lacks subject matter jurisdiction over the instant action.

**A. 28 U.S.C. § 1359**

Section 1359, titled "Parties collusively joined or made," states:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359. It is apparent from the exhibits submitted as part of Defendant's moving papers and Plaintiff's opposition papers that the sole purpose of Castillo's reorganization between August 10 and August 14, 2009 was to remain in federal court. The record is replete with instances of Castillo admitting that it took affirmative steps in order to cure the alleged diversity defects and then re-file its complaint in the same

4

court.³ Castillo does not contest this point in its opposition papers. It is beyond dispute, therefore, that Castillo's reorganization was undertaken in order "to invoke the jurisdiction" of this Court as contemplated by the plain language of § 1359.

Courts in this circuit "construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction." Airlines Reporting Corp. v. S&N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995). See also Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 474-75 (2d Cir. 1976) (construing § 1359 to bar "agreements whose primary aim was to vest the court with a jurisdiction it had not formerly enjoyed." (quoting O'Brien v. AVCO Corp., 425 F.2d 1030, 1034 (2d Cir. 1969))). In explaining its interpretation of § 1359, the Second Circuit has noted that "there can be no excuse for engulfing the already burdened federal courts with cases involving controversies between citizens of the same state, who seek to invoke federal jurisdiction through sham transactions. Section 1359 is merely the last of a series of enactments embodying that clear and salutary principle." O'Brien, 425 F.2d at 1033. Indeed, "[s]uch 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors." Prudential Oil, 546 F.2d at 474 (quoting Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 829 (1969)). The law is clear in this circuit that transactions engineered by a party for the purpose of creating federal diversity jurisdiction are precisely the sort of conduct prohibited by § 1359.

---

³ See, e.g., 8/7/09 Letter at 3 ("We are currently in the process of curing the alleged defect in diversity jurisdiction"); 8/10/09 Tr. at 7-8 (discussing intent to "cure" and re-file Castillo's complaint); August 12, 2009 Letter from Todd E. Soloway, Haas Decl. Ex. 2, at 2 ("Castillo proposes to negate any potential diversity problem by eliminating RJI's and Ms. Santangelo's indirect ownership of Castillo and re-filing this exact same action before Your Honor as a 'Related Action.'").

Castillo argues that § 1359 should not apply to the facts of this case for two reasons.  First, Castillo asserts that § 1359 has traditionally applied to situations where a non-diverse real party in interest pursues a claim through a diverse proxy and that this Court should hold § 1359 only applicable to those narrow circumstances.  Second, Castillo argues that the purpose of reorganizing its citizenship was to avoid three years of wasted litigation costs and that this desire to avoid waste is not improper or collusive as contemplated by § 1359.  For the reasons discussed below, the Court finds Castillo's arguments to be without merit.

**1. Real Party in Interest**

Castillo argues that: "If there is a non-diverse person who is the 'real party in interest' to the diverse plaintiff's claims, and who assigned his claims to that plaintiff in order to create a back-door entry to federal court, then § 1359 should apply.  If there is no such situation, then there is no improper collusion and § 1359 does not apply."  (Pl. Opp'n Mem. at 9.)  The latter does not follow from the former.  Castillo is correct that the cases upon which Sheraton relies – in particular, Airlines Reporting, Prudential Oil and O'Brien – involved assignments of claims from non-diverse parties to diverse parties and an analysis of who was the real party in interest.  Those cases, however, do not suggest that intentional or collusive acts to cure improper subject matter jurisdiction do not violate § 1359. Rather, Castillo's position is flatly contradicted by the plain language of the statute, which prohibits improper or collusive invocation of federal jurisdiction "by assignment *or otherwise*," 18 U.S.C. § 1359 (emphasis added), and the interpretation of that section by the Second Circuit as barring "*any agreement* whose primary aim is to

6

concoct federal diversity jurisdiction." Airlines Reporting, 58 F.3d at 862 (emphasis added and internal quotations omitted).

Castillo relies on North American Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447 (9th Cir. 1986), for the proposition that, where there was no assignment of claims and a plaintiff brings its own claims in its own name, § 1359 is not implicated. (Pl. Opp'n Mem. at 12.)  Castillo's reliance is misplaced because – unlike the instant case – North American Watch did not involve *any* diversity-creating agreement or transaction whatsoever.  The defendant in that case argued that the existence of a non-diverse, non-party subsidiary of plaintiff ran afoul of § 1359 and therefore the court lacked subject matter jurisdiction.  North Am. Watch, 786 F.2d at 1449.  The court held that "[t]here is no merit to appellants' suggestion that North American's corporate structure, which was fixed before the parties entered into any relationship, existed or was created to manufacture diversity jurisdiction." Id.  In contrast, Castillo's diversity-creating reorganization took place only in the face of a challenge to subject matter jurisdiction and was undertaken for the admitted purpose of trying to remain in federal court.  (See 8/7/09 Letter at 1 ("The last thing that Castillo wants to do is delay the trial or waste time litigating alleged procedural problems that can be readily and immediately cured.").)

Castillo further argues that Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969), supports its interpretation of § 1359.  In Kramer, the holding of the Supreme Court was that an assignment of a claim to a diverse party, where the assignee contracted to return 95% of any recovery to the non-diverse transferor, did violate § 1359.  Kramer, 394 U.S. at 824-25. Castillo relies, however, on one footnote in the Kramer opinion which reads, in relevant part: "we have no occasion to re-examine the cases in which this Court has

7

held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." Id. at 828 n.9.  Castillo argues that, because, after the reorganization, Santangelo and RJI retained no interest in the subject matter of the litigation, the transactions were absolute with respect to Santangelo and RJI and therefore, footnote 9 of Kramer supports the position that the Castillo reorganization was not improper or collusive regardless of the purpose of those transactions.  (Pl. Opp'n Mem. at 16-18.)  Castillo's reliance on the footnote's language is misplaced.  First, the footnote speaks of assignments of claims but nothing in the Kramer opinion or footnote suggests that § 1359 does not relate to the transfer of an ownership interest or any other diversity-creating agreement or transfer.  Second, as Castillo itself repeatedly points out, the instant case does not involve the assignment or transfer of claims.  (See Pl. Opp'n Mem. at 9, 11-13.)  Instead, it involves the reorganization of the ownership structure of an LLC with the intent of changing the LLC's citizenship for diversity purposes.[4] Kramer is therefore factually inapposite.  Finally, the Supreme Court's footnote merely notes that it does not revisit prior decisions.  Each of the four cases cited as examples of such prior decisions pre-date the enactment of 18 U.S.C. § 1359 in 1948 and are therefore of limited relevance to the issue before this Court.[5]

---

[4]   Castillo purchased Santangelo's membership interest in the managing member of Castillo Grand LLC by granting her a promissory note in the amount of $832,179.06 plus 10% interest per annum, with a maturity date on August 10, 2015.  (Pl. Opp'n Mem. at 6.)  RJI, previously a limited partner of Queen's Harbor Yacht & Country Club, Ltd. ("Queen's Harbor"), which is in turn owns a membership interest in the managing member of Castillo Grand LLC, formally disassociated itself from Queen's Harbor through a "Joint Unanimous Written Consent of the Directors and Sole Shareholder of Rochester Jacksonville, Inc." (Pl. Opp'n Mem. at 7.)  Castillo points to no consideration given to RJI as consideration for its partnership interest and Sheraton argues that none was given.  (Def. Mem. at 12.)

[5]   The predecessor statute to § 1359 reads, in relevant part:
> Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover

Castillo also argues that Santangelo and RJI now have no interest in Castillo's claims and have never had any control over this litigation. (Pl. Opp'n Mem. at 11-12, 16-18.) It is undisputed that Santangelo and RJI are not – and have never been – "real parties in interest" to this litigation. In other words, Santangelo and RJI have never been "person[s] entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefit[] from the action's final outcome." Black's Law Dictionary (8th ed. 2004). Furthermore, this argument misses the point because it is based on Castillo's faulty premise that § 1359 applies only to situations involving a "real party in interest" as opposed to any agreements designed to manufacture federal diversity jurisdiction. For the reasons discussed above, Castillo's narrow reading of § 1359 is contrary to the broad language of Second Circuit precedent and contrary to the plain language of the statute.

**2. Avoidance of Waste**

Castillo also argues that its only purpose in reorganizing its citizenship was to avoid wasting the litigation costs incurred over the last three years and submits that avoiding waste can never be an improper motive. (Pl. Opp'n Mem. at 18-23.) Castillo relies on three Supreme Court cases that it claims have endorsed the practice of curing a minor jurisdictional defect after filing in order to maintain federal court jurisdiction after years of litigation.

---

       thereon if no assignment had been made, except in cases of promissory notes negotiable
       by the law-merchant and bills of exchange.

Jurisdiction and Removal Act of 1875, sec. 1; see also Cross v. Allen, 141 U.S. 528, 533 (1891). Because the predecessor statute only contemplated assignments and did not contain the language "by assignment or otherwise" currently contained in § 1359, Castillo's reliance on the language of footnote 9 in Kramer and the cases cited therein is misplaced.

In Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989), an Illinois corporation sued a Venezuelan corporation, four Venezuelan citizens and a United States citizen domiciled in Venezuela (whose presence spoiled complete diversity). Newman-Green, 490 U.S. at 828. The Supreme Court held that when a diversity challenge was first raised on appeal, an appellate court may dismiss a dispensable party whose presence spoils diversity jurisdiction, thereby preserving the court's subject matter jurisdiction over the action. Id. at 827, 837-38. In doing so, the Supreme Court noted that by allowing an appellate court to dismiss a non-diverse dispensable party, the remaining parties would avoid the waste of re-filing the same action in district court against all defendants except the diversity-spoiler. Id. at 837.

Later, in Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996), the Supreme Court upheld a jury verdict in a case where complete diversity was lacking at the time of removal to federal court, but the non-diverse party was no longer a party by the time the case went to trial. In that case, a Kentucky citizen sued two corporations, one of which was also a Kentucky citizen. Caterpillar, 519 U.S. at 64-65. At the time of removal, the district court erroneously denied a motion to remand. Id. at 66, 70. On appeal, the court of appeals held that the district court's error in denying the motion to remand made it necessary to vacate the judgment entered by the district court. Id. at 67. The Supreme Court reversed, noting that "[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of *Erie R. Co. v. Tompkins*, considerations of finality, efficiency, and economy become overwhelming." Id. at 75 (citation omitted).

Castillo is correct that in <u>Newman-Green</u> and <u>Caterpillar</u> the Supreme Court expressed concern over waste and that in certain circumstances, such concerns over judicial resources and the importance of finality may overcome "hypertechnical jurisdictional purity." <u>See</u> <u>Newman-Green</u>, 490 U.S. at 837. But those cases involve important differences from the instant case. First, both <u>Newman-Green</u> and <u>Caterpillar</u> involved a party being dropped from the litigation after judgment. In those cases, certain non-diverse parties spoiled complete diversity *for other parties*. There was no question that once the jurisdiction-spoilers were removed from the litigation – either by operation of settlement or court action – complete diversity existed between the remaining parties. In the instant case, there is only one plaintiff and one defendant. It is Castillo – the sole plaintiff – whose citizenship is at issue. Therefore, there is no dispensable, non-diverse party that could be dropped in order to preserve diversity jurisdiction as the court did in <u>Newman-Green</u>. Further, neither <u>Newman-Green</u> nor <u>Caterpillar</u> involved a party taking affirmative steps to create diversity jurisdiction where no such jurisdiction existed before. As a result, neither case implicated 28 U.S.C. § 1359. There is no precedent or authority in <u>Newman-Green</u> and <u>Caterpillar</u> for a district court to go so far as to apply a general policy of avoiding waste, and thus excuse the specific practice of affirmatively "curing" diversity defects in the face of a subject matter jurisdiction challenge, which would otherwise run afoul of § 1359.

Citing <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567 (2004), Castillo argues that the Supreme Court has endorsed Castillo's decision to re-file this action. (Pl. Opp'n Mem. at 20-23.) Castillo misstates the holding of the <u>Grupo</u> case, which instead supports the decision reached herein. In <u>Grupo</u>, a partnership, having the citizenship of

11

each of its constituent members, sued a Mexican corporation.  Grupo, 541 U.S. at 568-69.  After a jury verdict in favor of plaintiff Atlas Global Group, L.P., defendant Grupo Dataflux moved to dismiss for lack of subject matter jurisdiction.  At the time the complaint was filed, Atlas Global's partnership included two Mexican citizens as partners and therefore, complete diversity was lacking.  Id. at 569.  The two non-diverse partners had left the partnership a month prior to the trial.  The Supreme Court nonetheless declined to extend Newman-Green and Caterpillar to the facts of Grupo and held that dismissal was necessary.  Id. at 582.  In dismissing plaintiff's case, the Supreme Court explicitly distinguished the prior cases: "this is not a case like *Caterpillar* or *Newman-Green* in which party lineup changes simply trimmed the litigation down to an ever-present core that met the statutory requirement.  Rather, this is a case in which a single party changed its citizenship by changing its internal composition."  Id. at 579-80 (internal quotations omitted).

Castillo argues that both the majority and dissent in Grupo acknowledged that the result of the Court's ruling would be for the plaintiff to simply re-file the same action in the same district court.  See Id. at 581 ("even if the parties run the case through complete 'relitigation in the very same District Court in which it was first filed in 1997, the 'waste' will not be great.  Having been through three years of discovery and pretrial motions in the current case, the parties would most likely proceed promptly to trial."); Id. at 595 ("Atlas can be expected 'simply to refile in the District Court' and rerun the proceedings") (Ginsberg, J., dissenting) (quoting Newman-Green, 490 U.S. at 837).  Castillo views this language as an endorsement of the steps it undertook in reconstituting its citizenship and re-filing this action.  (Pl. Opp'n Mem. at 20.)  Castillo reads this

language in the Grupo opinions too broadly.  The opinion of the Court merely noted that there would be no significant waste if the plaintiff in Grupo re-filed that action.  In Grupo, however, § 1359 was not an issue.  For undisclosed reasons, the non-diverse members of the plaintiff partnership had left the partnership prior to the trial and prior to the diversity jurisdiction challenge being raised.  Section 1359 was in no way implicated because there was no suggestion that the non-diverse partners were dropped in order to create federal subject matter jurisdiction.  For that reason alone, the Grupo case is inapplicable to the case at bar.

In short, while the Supreme Court in Grupo may have "endorsed" re-filing a case after dismissal for lack of diversity jurisdiction when – as was the case in Grupo – no other bar to diversity jurisdiction exists, the Grupo case in no way "endorses" Castillo's deliberate efforts to reconstitute its citizenship for the sole purpose of creating federal subject matter jurisdiction.  Castillo's actions have violated 28 U.S.C. § 1359 and nothing in the cases relied on by Castillo compels a contrary conclusion.

Notwithstanding the conclusion that the complaint must be dismissed, Castillo's concerns about wasted litigation costs are well-founded.  This case is trial-ready.  There is no reason the discovery taken to date should not be adopted – indeed, no reason it should not be *sufficient* – in the related state court action based on the same underlying claims as those alleged in this complaint.  It would be extremely wasteful and unprofessional for the parties to re-litigate issues that have already been decided in this Court over the last three years.

## III. Conclusion

For the foregoing reasons, Defendant Sheraton's motion to dismiss for lack of subject matter jurisdiction is granted. Defendant also outlines the details of the diversity-creating transactions and argues that this Court should disregard these transactions because they lacked economic substance and because the Santangelo transaction was not consummated prior to the filing of this action. For these reasons, Defendant argues that even if the transactions did not violate § 1359, complete diversity did not exist as of the filing of this complaint. Because the Court finds that the transactions violated § 1359, even assuming *arguendo* that they were completed and effective before filing, the Court need not reach Defendant's factual arguments about the details of the transactions, even though they do not appear to be groundless. Defendant also moves to dismiss the complaint for improper venue. In light of the Court's ruling on the issue of subject matter jurisdiction, Defendant's motion to dismiss for improper venue is denied as moot.
IT IS SO ORDERED.

Dated: New York, New York

December 9, 2009

_____

Robert P. Patterson, Jr.

U.S.D.J.

14

Copies of this order were faxed to:

Todd Soloway
Pryor Cashman LLP
7 Times Square
New York, NY 10036-6569
(212) 421-4100
Fax: (212) 798-6328

William A. Brewer III
Bickel & Brewer
767 Fifth Avenue, 50th Floor
New York, NY 10153
(212) 489-1400
Fax: (212) 489-2384

James S. Renard
Bickel & Brewer
4800 Bank One Center
1717 Main Street
Dallas, TX 75201
(214) 653-4000
Fax: (214) 653-1015

15