UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASTILLO GRAND, LLC,

                          Plaintiff,

           - against -

SHERATON OPERATING CORPORATION,

                          Defendant.

09 CV 7197 (RPP) (GWG)


**PLAINTIFF CASTILLO GRAND, LLC'S MEMORANDUM OF LAW
(A) IN OPPOSITION TO DEFENDANT SHERATON OPERATING
CORPORATION'S MOTION FOR COSTS PURSUANT TO
28 U.S.C. § 1919; AND (B) IN SUPPORT OF CASTILLO'S
CROSS-MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927**


PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
(212) 421-4100

*Attorney for Plaintiff*

*Of Counsel:*
    Todd E. Soloway
    tsoloway@pryorcashman.com
    William L. Charron
    wcharron@pryorcashman.com
    Joshua D. Bernstein
    jdbernstein@pryorcashman.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................. 1

RELEVANT FACTS ................................................................................................................ 4

    A.  Sheraton's Counsel Conceals A Subject
         Matter Jurisdiction Issue In The First Action ................................................. 4

    B.  Castillo Openly Advises Of Its Intention
         To File The Second Action To Avoid Waste .................................................. 6

    C.  Sheraton's Motion To Dismiss The Second Action Is Actively Opposed
         And The Court Expresses Concern With Sheraton's Motives And Conduct .................. 7

    D.  The Opinion Dismisses The Second Action But Constrains
         Sheraton To Proceed Directly To Trial In The State Action .......................... 11

ARGUMENT ........................................................................................................................... 11

    I.  SHERATON IS NOT ENTITLED TO ANY AWARD UNDER § 1919 ...................... 11

        A.  "Justice" Is Not Served By Awarding Any Costs To Sheraton ................................ 12

        B.  Sheraton Is Not Entitled To Any Attorneys' Fees As Part Of Its "Costs" ................ 14

        C.  Sheraton Is Entitled To No More Than Nominal Discovery "Costs" ........................ 15

    II.  CASTILLO'S CROSS-MOTION FOR SANCTIONS
        UNDER 28 U.S.C. § 1927 SHOULD BE GRANTED ................................................. 17

CONCLUSION ....................................................................................................................... 20

## TABLE OF AUTHORITIES

**CASES**                                                    **PAGE(s)**

Baker v. Urban Outfitters, Inc.,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006), aff'd,
  249 Fed. Appx. 845 (2d Cir. 2007)...................................................................17, 18, 19

Barron's Education Series, Inc. v. Hiltzik, N.S.,
  987 F. Supp. 224 (E.D.N.Y. 1997) ...........................................................................14

Correspondent Services Corp. v. J.V.W. Investment Ltd.,
  524 F. Supp. 2d 412 (S.D.N.Y. 2007)........................................................................14

Davis v. Eastfield Ming Quong, Inc.,
  N. C-08-00769 RMW, 2009 WL 225420 (N.D. Cal. Jan. 29, 2009)...............11, 13, 15, 16

Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.,
  179 F.R.D. 328 (N.D. Ala. 1998)...................................................................12, 13, 16, 17

FTSS Korea v. First Technology Safety System, Inc.,
  254 F.R.D. 78 (E.D. Mich. 2008) ...............................................................................14

Geliman, S.A. v. Design Ideas, Ltd.,
  No. 05 Civ. 7102 (LTS) (THK), 2009 WL 349157 (S.D.N.Y. Feb. 11, 2009) ................13

Grupo Dataflux v. Atlas Global Group, L.P.,
  541 U.S. 567 (2004).......................................................................................6, 11, 13

Gucci America, Inc. v. Rebecca Gold Enterprises, Inc.,
  802 F. Supp. 1048 (S.D.N.Y. 1992)............................................................................15

Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,
  305 F. Supp. 803 (S.D.N.Y. 1969) .............................................................................14

Iannone v. Frederic R. Harris, Inc.,
  No. 93 Civ. 4865 (JGK) (JCF) 1997 WL 12809 (S.D.N.Y. Jan. 13, 1997).......................15

Invesco Institutional (N.A.), Inc. v. Paas,
  No. 3:07-CV-0175-R, 2009 WL 111783 (W.D. Ky. Jan. 15, 2009) ...............................13

Itel Containers International Corp. v. Puerto Rico Marine Management, Inc.,
  108 F.R.D. 96 (D.N.J. 1985).................................................................................18, 19

Montgomery & Larmoyeux v. Philip Morris, Inc.,
  19 F. Supp. 2d 1334 (S.D. Fla. 1998) .........................................................................17

**CASES**                                                                                      **PAGE(s)**

Shannon v. Fireman's Fund Insurance Co.,
    156 F. Supp. 2d 279 (S.D.N.Y. 2001)...........................................................................15

Soler v. G. & U., Inc.,
    801 F. Supp. 1056 (S.D.N.Y. 1992)...........................................................................15

**STATUTES**

Fed. R. Civ. P. 41(a)(2).........................................................................................................14

28 U.S.C. § 1359..........................................................................................................*passim*

28 U.S.C. § 1919..........................................................................................................*passim*

28 U.S.C. § 1920.................................................................................................................15

28 U.S.C. § 1920(3)............................................................................................................16

28 U.S.C. § 1920(4)............................................................................................................16

28 U.S.C. § 1927..........................................................................................................*passim*

Plaintiff Castillo Grand LLC ("Castillo") hereby opposes the motion by defendant Sheraton Operating Corporation ("Sheraton") for costs pursuant to 28 U.S.C. § 1919, and Castillo further cross-moves for sanctions against Sheraton's counsel pursuant to 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

Sheraton has brought a vexatious motion that should be denied. The essential premise of Sheraton's motion is entirely illusory: *i.e.*, that Castillo supposedly filed its second action deceitfully and in bad faith, and that the outcome of this Court's Opinion and Order dated December 9, 2009 that dismissed Castillo's second action (the "Opinion") was supposedly pre-ordained against Castillo. The record objectively belies this premise.

Castillo's decision to file the second action before this Court was motivated by one thing: the desire to maintain the September 8, 2009 trial date and to avoid unconscionable waste. Even though the Opinion disagrees with Castillo's legal reasoning concerning the application of 28 U.S.C. § 1359 to Castillo's second action, the Opinion expressly embraces Castillo's goal of avoiding waste. As stated in the Opinion's penultimate paragraph:

> Notwithstanding the conclusion that the complaint must be dismissed, **Castillo's concerns about wasted litigation costs are well-founded.** This case is trial-ready. There is no reason the discovery taken to date should not be adopted – **indeed, no reason it should not be *sufficient*** – in the related state court action based on the same underlying claims as those alleged in this complaint. **It would be extremely wasteful and unprofessional for the parties to re-litigate issues that have already been decided in this Court over the last three years.**

(Italics in original, other emphases added; See Exhibit A annexed to the Declaration of Todd E. Soloway, dated July 2, 1998 ("Soloway Decl.").

Indeed, the record is clear and undisputed that Sheraton, by its eleventh-hour motion to dismiss the first action, strategically sought extreme delay and waste. Notwithstanding

1

Sheraton's affirmative invocation of this Court's jurisdiction in the first action with its counterclaims, which were similarly premised on diversity jurisdiction, and Sheraton's further motion for summary judgment to this Court on its counterclaims, Sheraton also privately sought evidence to try to disturb this Court's diversity jurisdiction as a 'Plan B' in the event that this Court denied Sheraton's request for summary judgment.

*Only after* this Court denied summary judgment did Sheraton reveal that it had "unearthed" (in the words of this Court – 10/23/09 Tr. at 25:11-12) obscure evidence that the parties were not necessarily completely diverse.  Sheraton waited until only a month before the September 8, 2009 trial date to share this information with anyone.  Nevertheless, the record indicates that Sheraton's counsel knew of such evidence *before* this Court issued its summary judgment ruling.  Moreover, after Sheraton commenced the same essential action in state court, Sheraton's counsel later admitted that Sheraton's plan was to seek yet more discovery, to bring a duplicative summary judgment motion on the same issues that this Court had previously decided, and, thus, to unreasonably delay trial.

It is against this backdrop that Castillo commenced its second action before this Court. Castillo did so openly and explicitly explained its concerns and intentions to the Court before commencing its second action.   Castillo supported its position with numerous Supreme Court, Second Circuit, and on-point persuasive authorities from the Ninth Circuit (which follows the Second Circuit's approach to applying § 1359).  The Court conducted a two hour oral argument on the application of § 1359.  Castillo's position was advanced with the most *bona fide* motives and in the utmost good faith and professionalism, and, contrary to Sheraton's premise, the depth of arguments that occurred before this Court demonstrate that Castillo's position was not "blatantly" at odds with § 1359.  The only thing that was "blatant," as this Court observed

during the oral argument, was that Sheraton was trying to "hide the ball" regarding its ulterior motive to delay trial and cause waste. (10/23/09 Tr. at 47:17-18.)

Ultimately, the Opinion found that Castillo interpreted its authorities "too broadly" and thus the Opinion dismissed Castillo's second action. Nevertheless, the Opinion also afforded Castillo the very practical relief it sought: *i.e.*, an admonition to Sheraton and its counsel that it would be "unprofessional" for Sheraton to relitigate issues that this Court had already decided after three years of discovery in the first action. Similarly, during the oral argument, in the face of evasive answers from Sheraton's counsel, the Court was forced to raise the possibility that Sheraton's counsel was trying to "hide the ball" in refusing to advise the Court why Sheraton would not agree to proceed straight to trial. That admonition is responsible for Sheraton being constrained to try this case in state court without further judicial gamesmanship. The ability to get to trial promptly was the relief that Castillo sought, and this Court enabled that very relief.

Furthermore, Castillo, which respectfully, but strongly, disagreed with the reasoning in the Opinion, promptly appealed the Opinion to the Second Circuit. The record is undisputed that Castillo elected to dismiss its appeal voluntarily *only after* Sheraton was constrained in the simultaneously pending state court action to agree to proceed to trial in that action without making a duplicative and wasteful summary judgment motion that this Court had already decided in the first action.

Therefore, Sheraton is not entitled to any award under § 1919. Sheraton is not entitled to a reimbursement of attorneys' fees because (a) fees are not typically awarded under § 1919, and (b) fees are awarded only upon a showing of deceit or fraud, which objectively does not exist here. Furthermore, Sheraton is not entitled to costs under § 1919 because of Sheraton's

unclean hands in strategically withholding information about this Court's lack of diversity in the first action until only *after* this Court had denied Sheraton's motion for summary judgment.

In addition, the fees and costs that Sheraton seeks in connection with its motions to dismiss are outrageous and indefensible, particularly in connection with an issue that Sheraton repeatedly characterizes as "plain" and "clear." Moreover, all of the discovery that Sheraton sought in aid of its motion to dismiss the second action concerned Sheraton's arguments that the diversity curing steps taken by Castillo were done without proper attorney authority or without economic consideration. That discovery was misguided, meritless, and had nothing to do with the Court's basis for dismissing the second action (as articulated in the Opinion). Thus, Sheraton did not earn the right to be reimbursed for its costs in taking such discovery.

Castillo herein also cross-moves for sanctions against Sheraton's counsel pursuant to 28 U.S.C. § 1927. There is no question that Sheraton's counsel acted strategically and in bad faith in trying to game the judicial system. Even without discovery of Sheraton's counsel, the record reflects that Sheraton's counsel sat on its information, made no disclosure to Castillo of the alleged diversity problem and made no effort to confer in good faith about the problem, and instead tried to get a "do-over" (in the words of Sheraton's counsel) after this Court's summary judgment decision in the first action did not go Sheraton's way.

## RELEVANT FACTS

### A.    Sheraton's Counsel Conceals A Subject Matter Jurisdiction Issue In The First Action

The record concerning the parties' diversity jurisdiction arguments was fully developed in the first and second actions before this Court.

In the first action, which was commenced in July 2006 and lasted until August 2009, the parties engaged in more than three years of active discovery and motion practice. (See Soloway

4

Decl. Exh. B ("Bernstein Decl.") at ¶¶ 5-15, 36-45.[1])  Sheraton asserted eight counterclaims in

the first action (Sheraton initially asserted three counterclaims, but that figure grew in each of

Sheraton's amended pleadings over time), and affirmatively premised those counterclaims on

allegations of complete diversity jurisdiction.  (See Sheraton's Second Amended Answer With

Counterclaims dated July 28, 2008, Bernstein Decl. Exh. 5 at ¶¶ 285-404.)  Sheraton moved this

Court for summary judgment on its counterclaims in December 2008, thereby further

affirmatively invoking this Court's jurisdiction.  (See Bernstein Decl. Exh. 26.)

    After this Court denied Sheraton's motion for summary judgment, and only one month

before the September 8, 2009 trial, Sheraton surprisingly moved to dismiss the first action

claiming that certain third and fourth tier members of Castillo were New York citizens, thereby

allegedly destroying complete diversity.  (Bernstein Decl. at ¶ 16.)  Sheraton made its motion

without conferring with Castillo's counsel beforehand or making any sort of discovery

disclosure whatsoever.  (Id.)

    Sheraton's motion relied on an independent and private investigation that Sheraton had

secretly conducted some time in the past.  (Id. at ¶ 17.)  The record reflects that Sheraton's

counsel had been sitting on its private evidence strategically, as a 'Plan B' in the event that this

Court were to deny its summary judgment motion (which is what happened).  (Id. at ¶¶ 18-27.)

The record further reflects that Sheraton's counsel tried to mislead the Court as to their state of

knowledge, making vague statements that were both belied by other evidence and internally

inconsistent (i.e., claiming in one place that they happened to "discover" facts while reviewing

discovery documents in preparation for trial, yet admitting later to this Court that they had

affirmatively commissioned their own "investigation" into diversity jurisdiction at some point

---

[1] A complete set of the exhibits to the Bernstein Declaration may be found at docket entry no. 27.

prior thereto).  (Id. at ¶¶ 27-31 & Ex. 31 thereto at 8/10/09 Tr. 9:14-25.)  Sheraton's counsel

refused to give this Court a straight answer as to just when and how it acquired its information.

(Id.)

**B.    Castillo Openly Advises Of Its Intention
       To File The Second Action To Avoid Waste**

Sheraton's last-second revelation of an alleged diversity defect was plainly calculated by

Sheraton's counsel to significantly delay and prejudice Castillo's ability to get to trial.

Sheraton's counsel would later reveal plans to bring a duplicative summary judgment motion in

its new state action, which motion had already been decided by this Court upon fully developed

evidence and authorities.  (See Soloway Decl. Exh. C.)  In short, Sheraton sought an

unconscionable waste of judicial and party resources.

Sheraton's motion to dismiss the first federal action presented Castillo with a choice:

either (a) Castillo could become a test case and oppose dismissal of the first action on the basis

of "minimal diversity jurisdiction," which is a concept that the Supreme Court in Grupo

Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 578 (2004) suggested may have legal

efficacy in extreme cases such as this; or (b) Castillo could cure the alleged diversity defect and

re-file the same action before this Court in order to avoid motion practice and the prospect of

egregious waste, which the Supreme Court in Grupo Dataflux impliedly embraced.  Id. at 581.

Castillo openly advised this Court of its desire to avoid waste and to proceed with the

second option.  (Bernstein Decl. ¶¶ 32-33.)  This Court told Castillo to commence its second

action within one week.  (Id. at ¶ 34.)  Sheraton asked for discovery in aid of a contemplated

motion to dismiss Castillo's second action pursuant to 28 U.S.C. § 1359, which this Court

permitted and directed to occur on an expedited basis.  (Order dated Aug. 20, 2009.)  Castillo

filed its second action on August 14, 2009, one day after this Court issued its order dismissing

the first action (without contest from Castillo), and the parties engaged in all of the expedited

discovery that Sheraton sought.

**C.      Sheraton's Motion To Dismiss The Second Action Is Actively Opposed
        And The Court Expresses Concern With Sheraton's Motives And Conduct**

Castillo thoroughly explained to this Court why 28 U.S.C. § 1359 did not apply to bar

Castillo's second action.  In particular, Castillo explained that there was no non-diverse "real

party in interest" hiding behind a diverse proxy who sought the illegitimate goal of gaming the

federal courts in order to avoid a state judicial system.  *That* is the goal that § 1359 seeks to

avoid.  Castillo also explained that its motivation to avoid waste is *not* an improper motive

under § 1359.  Castillo supported its position with numerous decisions from the Supreme Court,

the Second Circuit and the Ninth Circuit (which follows the Second Circuit's approach to

applying § 1359).  (See Soloway Decl. Exh. D.)

On October 23, 2009, this Court held oral argument on Sheraton's motion.  That

argument lasted for approximately two hours.  Your Honor was actively engaged in the

arguments and in examining Castillo's authorities and positions.  *At no point* did this Court even

intimate that Castillo's actions were the product of mal intent or that Castillo's arguments were

baseless.  To the contrary, the Court expressly acknowledged that Castillo had acted

legitimately:

> CASTILLO:  ….  And my client took the actions it took for entirely good and
> legitimate reasons.
>
> THE COURT:  *No one is suggesting that you didn't.  Oh yes, they [Sheraton] are
> suggesting you didn't, but I put that aside.*

(10/23/09 Tr. at 30:7-10.)

7

In contrast, the Court repeatedly expressed concern and frustration with Sheraton's motives in seeking to delay trial. The following exchanges with Sheraton's counsel are illustrative:

> SHERATON: There is not even a suggestion on the part of Castillo that there was any business justification or other reason for those transactions [by which Castillo cured the alleged diversity defects].
>
> THE COURT: Well, you have the justification that this case was on the trial calendar, and was scheduled to be tried in September, and all discovery had been completed, and –
>
> SHERATON: Your Honor –
>
> THE COURT: Obviously, came as a shock, that motion [by Sheraton to dismiss the first action]. It seemed to be well grounded to dismiss the case. And possibly put everything back to square one.
>
> SHERATON: …. But your Honor I understand the point was that they wanted to gain entry back into this Court to continue the litigation point B –
>
> THE COURT: *To try the case.*
>
> SHERATON: Yes, your Honor.

**(10/23/09 Tr. at 7:2-21 (emphasis supplied).)**

> THE COURT: It is possible in that action [the state action commenced by Sheraton] to stipulate that all of the discovery in the federal action could be utilized, and the parties proceed to trial promptly on the Westchester action?
>
> ***
>
> SHERATON: …. I did say that there would probably be some motion practice, there might be an additional expert or two in that case….

**(Id. at Tr. 12:19-13:22.)**

> THE COURT: Look, but you can cure all that up in Westchester. All you have to do is agree with the other side that all of these materials can be submitted and be relied on. And I don't know what the expert testimony amounts to, but it seems to me that that would be very limited, too…. You were ready for trial…. What are the motions you have in mind from the defense. Why can't this case go to trial in Westchester right away?

SHERATON:  Your Honor, there are some motions with respect to – there was an issue –

\*\*\*

THE COURT:  Why couldn't – I can't see why you have to have motions on those things.

\*\*\*

THE COURT:  [Castillo] is raising this issue about *Newman v. Green*[, 490 U.S. 826 (1989)].  And I mean, obviously, I should pay attention to unwarranted delay and matters of that sort.

\*\*\*

THE COURT:  ….  You raised a valid jurisdictional point.  But discovery was closed.  And I thought that we were going to trial in September.  And this gets raised in August, which is a month before trial.  Now, I don't see why, if you were ready for trial in this case, you can always amend your answer….  But it you're – if what you're doing is raising a new issue, which is going to delay trial on this matter, I want to know about it.  *Because I don't look with favor on people raising new issues that can be cured just by amendment of the pleadings to conform with the proof that has been elicited already.*

**(Id. at 30:24-34:18 (emphasis supplied).)**

THE COURT:  The point is this.  That we really – this case should be on trial.  And promptly.  And I want to know if it will, regardless of which way this case comes out, whether I keep jurisdiction here based on the plaintiff's new complaint, or whether it goes to Westchester.

\*\*\*

THE COURT:  What are the motions that would be brought in Westchester, are other the in limine motions that are here.

SHERATON:  Your Honor, honestly, I am – I didn't come here today prepared to –

THE COURT:  *And I'm not getting an answer.*

SHERATON:  -- to negotiate that with the Court.

THE COURT:  I don't want you to negotiate it with the Court.  I just want to know what they are.

\*\*\*

THE COURT: …. I had this case with Skadden Arps…. I thought I entered judgment appropriately. But anyway, even though Skadden's out of the case, it went up to the Circuit. And they told me that I had to – case would have to dismissed unless, unless, unless, unless, unless –

SHERATON: Well, see, your Honor. Then you and I are on common ground. We have had the experience in our careers where someone got a do-over after quite a bit of –

THE COURT: *They didn't get a do-over.*

SHERATON: Well, I'm glad for you.

THE COURT: Because I made the necessary findings, ….

**(Id. at Tr. 37:23-40:15 (emphasis supplied).)**

THE COURT: But I'm worrying about motions that go beyond that.

CASTILLO: That's what I'm worried about.

THE COURT: That's what he is worried about.

SHERATON: Today, I'm not prepared to do that. But I can make a practical suggestion, which is –

THE COURT: *You ought to be prepared to do it right today.*

SHERATON: Well, your Honor –

THE COURT: *You ought to be – you have the general counsel here.*

SHERATON: Your Honor –

THE COURT: *You ought to be prepared to do it.*

SHERATON: This is a case that has gone on for three years –

THE COURT: *No, no, no –*

SHERATON: I can make a practical suggestion to your Honor, if you –

THE COURT: *If you have something, you ought to be prepared to do it.*

10

SHERATON:  Okay.  Well, your Honor, I –

THE COURT:  *What are you doing, playing hide the ball?  Hide the ball? Come on.*

**(Id. at Tr. 46:21-47:18 (emphases supplied).)**

**D.     The Opinion Dismisses The Second Action But Constrains
        Sheraton To Proceed Directly To Trial In The State Action**

The Opinion disagreed with Castillo's legal analyses, finding that Castillo's

interpretation of § 1359 was too "narrow" and further finding that Castillo's interpretation of

Grupo Dataflux and other Supreme Court precedent concerning the curing of "hypertechnical"

diversity defects to avoid waste was "too broad."  (See Soloway Decl. Exh. A at 9, 12-13.)

Castillo immediately (*i.e.*, the next day) noticed its appeal of the Opinion to the Second Circuit.

(Notice of Appeal dated December 10, 2009.)

Castillo voluntarily dismissed its appeal on or about April 21, 2010, because – and only

because – Sheraton finally agreed not to make a duplicative summary judgment motion in the

state court action and to permit that action to proceed straight to trial.  The trial in the state court

action commences on July 19, 2010.

## ARGUMENT

**I.     SHERATON IS NOT ENTITLED TO ANY AWARD UNDER § 1919**

28 U.S.C. § 1919 is a discretionary statute that provides:

Whenever any action or suit is dismissed in any district court … for want of
jurisdiction, … such court may order the payment of just costs.

"[C]osts awarded under section 1919 are not subject to a presumption that they shall be

awarded to a prevailing party."  Davis v. Eastfield Ming Quong, Inc., No. C-08-00769 RMW,

2009 WL 225420, at *1 (N.D. Cal. Jan. 29, 2009) (citation omitted).  Rather, the question is

whether the prevailing party succeeded on grounds that would make reimbursement of its costs "just." E.g., id.

A.    **"Justice" Is Not Served By Awarding Any Costs To Sheraton**

The question presented by Sheraton's motion is whether "justice" would be served by taxing very sizeable costs (as claimed by Sheraton) upon Castillo. See Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc., 179 F.R.D. 328, 331 (N.D. Ala. 1998) ("This leaves only one question to be decided: What, if any, are defendants' 'just costs' to be taxed by the court against [the plaintiff] in this highly unique case? The word 'justice' is an elongation of the word 'just.' 'Justice' and 'fairness' have a close kinship. Thus, the sole question before the court in this case can be restated simply as 'What is fair here?'").

Sheraton's conduct was anything but fair and just. Sheraton affirmatively invoked this Court's diversity jurisdiction in the first federal action with its counterclaims. Sheraton later moved to dismiss the first federal action strategically to try to get a "do-over" (in the words of its counsel during the October 23, 2009 hearing) after this Court had denied Sheraton's motion for summary judgment. Sheraton then threatened to cause unreasonable delay and waste in the new action with duplicative motion practice and unspecified additional discovery.

Thus, Castillo commenced the second federal action to try to avoid an egregious waste of judicial and party resources, and to try to protect its imminent trial date upon a closed record after more than three years of discovery and motion practice. Castillo's motive in bringing the second action was, as this Court agreed during the October 23 hearing, "good and legitimate."

Sheraton's motive of "hiding the ball" and causing undue waste and delay, by contrast, was anything but legitimate or "just." Similarly, Sheraton's strategic suppression of evidence concerning diversity, and its efforts to mislead the Court as to when Sheraton first learned of the

alleged diversity problems, were sanctionable conduct (as discussed further below).  Sheraton's motion for "just costs" under § 1919 should be denied on the basis of Sheraton's unclean hands alone.  Cf. Davis, 2009 WL 225420, at *2 (disallowing costs as "just" when defendant failed to comply with court order).

Moreover, the diversity question raised in this case was "highly unique."  Ericsson, 179 F.R.D. at 331.  Indeed, Castillo could have elected to oppose Sheraton's motion to dismiss the first action and to become the test case for the "minimal diversity jurisdiction" theory, as the Supreme Court had suggested in Grupo Dataflux.  541 U.S. at 578.  The "benefit of the doubt" thus belongs to Castillo in the § 1919 analysis.  Ericsson, 179 F.R.D. at 334; see also Invesco Institutional (N.A.), Inc. v. Paas, No. 3:07-CV-0175-R, 2009 WL 111783, at *2 (W.D. Ky. Jan. 15, 2009) ("Though Plaintiff's decision to amend its complaint led to dismissal after [an indispensable third party] moved to intervene, this does not justify sanctioning Plaintiff.  The Court finds that Plaintiff has taken no action that would justify an order [under § 1919] for it to pay [the defendant's] costs.").

Furthermore, Castillo's decision to proceed with a second action, and its legal arguments in support of bringing that action, were supported by closely analyzed case law and "were far from frivolous."  Ericsson, 179 F.R.D. at 334; see also Geliman, S.A. v. Design Ideas, Ltd., No. 05 Civ. 7102 (LTS) (THK), 2009 WL 349157, at *2 (S.D.N.Y. Feb. 11, 2009) (denying award of costs under § 1919 where plaintiff's conduct "was not the product of bad faith").

There is no truth to Sheraton's assertion that "Castillo filed this Second Action even though it knew that the Court lacked subject matter jurisdiction pursuant to the plain language of Section 1359."  (Sheraton Br. at 10.)  Sheraton thoroughly argued, in good faith, why § 1359 was inapplicable to Castillo's second federal action.  Although the Opinion disagreed with

Castillo's analysis, Castillo respectfully appealed the Opinion and only voluntarily dismissed

that appeal in the interest of conserving resources after Sheraton finally agreed to drop its

vexatious threat to make a duplicative summary judgment motion in the state court action.

Therefore, "justice" is not served by taxing Castillo for having asserted a good faith and

thoughtful position that was motivated by protecting the parties and the courts from undue

waste.  Sheraton's motion to use § 1919 to set a chilling effect precedent upon good faith

litigants like Castillo serves no public policy and should be denied.

**B.      Sheraton Is Not Entitled To Any Attorneys' Fees As Part Of Its "Costs"**

Only "extraordinary circumstances" warrant an award of attorneys' fees as part of a "just

costs" award under § 1919.  E.g., Barron's Educ. Series, Inc. v. Hiltzik, N.S., 987 F. Supp. 224,

225-26 (E.D.N.Y. 1997) (citations omitted).  Extraordinary circumstances means that "fraud or

trickery [was] practiced upon the court or other party."  Id. at 225 (citing Hylte Bruks

Aktiebolag v. Babcock & Wilcox Co., 305 F. Supp. 803, 810 (S.D.N.Y. 1969)).  Sheraton's sole

authority on this point is not to the contrary.  Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.,

524 F. Supp. 2d 412, 421 (S.D.N.Y. 2007) (explaining that "attorneys' fees can be included in

'just costs' awarded under Section 1919 upon a 'showing of extraordinary circumstances'")

(citing, *inter alia*, Barron's and Hylte Bruks).[2]

Sheraton's request for $200,000 in attorneys' fees under § 1919 is frivolous.  There is

absolutely no basis to find that Castillo engaged in any fraud or trickery in commencing the

---

[2] Sheraton relies upon FTSS Korea v. First Tech. Safety Sys., Inc., 254 F.R.D. 78, 79-80 (E.D. Mich.
2008), for the proposition that attorneys' fees may be awarded under § 1919.  (Sheraton Br. at 10 &
n.40.)  However, that case, which concerned a plaintiff's voluntary dismissal under Fed. R. Civ. P.
41(a)(2), expressly awarded fees under that same rule based upon "terms that the court considers
proper."  Sheraton also relies on inapposite authorities addressing the availability of sanctions under 28
U.S.C. § 1927, which expressly permits the recovery of "attorneys' fees" and which is an entirely
separate analysis from the § 1919 analysis.  (Sheraton Br. at 10 & n.41.)  Castillo explains the § 1927
analysis below in connection with its cross-motion.

second action. Castillo was open about its intention to commence the second action; was open

about how it intended to go about doing so; was open in appurtenant discovery to Sheraton; and

was thorough in its analysis of case law to support its decision. Sheraton deserves no award of

attorneys' fees.[3]

**C.**   **Sheraton Is Entitled To No More Than Nominal Discovery "Costs"**

"'[C]ourts have found that standards applied under [28 U.S.C.] § 1920 are useful in

interpreting section 1919's 'just costs.'" Davis, 2009 WL 225420, at *1 (citations omitted).

Section 1920 recognizes the following "costs":

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for
use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials
where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

---

[3] The fees sought by Sheraton are also outrageous. Among other indefensible practices, Sheraton's
attorneys staffed a bloated and unnecessary team of *eight* attorneys, all of whom engaged in regular
block-billing, with regularly vague or meaningless descriptions, in grossly inflationary 30-minute
increments. See, e.g., Soler v. G. & U., Inc., 801 F. Supp. 1056, 1061 (S.D.N.Y. 1992); Shannon v.
Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001); Gucci Am., Inc. v. Rebecca Gold
Enters., Inc., 802 F. Supp. 1048, 1051-52 (S.D.N.Y. 1992); Iannone v. Frederic R. Harris, Inc., No. 93
Civ. 4865 (JGK) (JCF) 1997 WL 12809, at *2-3 (S.D.N.Y. Jan. 13, 1997). For example, all of William
Brewer's time (59.1 hours; $38,415) was billed with the impenetrable description: "Pursue various
pretrial matters." Mr. Brewer billed this same way daily, including weekends when no other attorneys
were working, between August and October 2009 (i.e., during the period of motion practice).
Furthermore, notwithstanding Sheraton's refrain in motion practice to this Court that the law concerning
28 U.S.C. § 1359 was supposedly "clear" and "plain," Sheraton's counsel nonetheless billed for an
astonishing amount of research time (292 hours; $76,829) in connection with Sheraton's motion to
dismiss the second action. Moreover, almost half of the cases cited in Sheraton's motion to dismiss the
first action were the same as the cases cited in the motion to dismiss the second action. There is no
question that Sheraton's counsel inflated their bills beyond any reasonable measure. Were this Court to
find that Sheraton is entitled to any fee reimbursement, Castillo deserves a full hearing to more
thoroughly analyze and present Sheraton's counsel's egregious fee practices.

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Expenses that are <u>not</u> recognized as "costs" under § 1919 include "administrative fees, like delivery costs," and "overhead of attorney's law firm such as postage, photocopy charges, express mail." <u>Davis</u>, 2009 WL 225420, at *2 (citations omitted).

The only itemized expenses claimed by Sheraton that are arguably recognizable as "costs" are $5,405 in deposition transcript expenses.  28 U.S.C. § 1920(3).  Sheraton claims $2,075 in "delivery and subpoena-related" expenses, but those are not recognized "costs." <u>Davis</u>, 2009 WL 225420, at *2.  Sheraton claims $10,695 in attorney travel and lodging expenses, but those are not recognized "costs."  (Such expenses should only be considered in connection with a possible attorneys' fee award, which, as explained above, is inapplicable here.)  Sheraton claims $11,106 in electronic attorney research expenses, but those, too, are not recognized "costs."  Sheraton claims $6,153 in "reproduction and litigation support" expenses, but Sheraton fails to itemize between impermissible law firm administrative, overhead and photocopying expenses, <u>Davis</u>, 2009 WL 225420, at *2, and potentially permissible copying costs under § 1920(4).

Furthermore, all of Sheraton's discovery efforts were focused on trying to prove that Castillo's diversity-curing efforts lacked proper attorney authority or economic consideration. Sheraton's arguments in this regard were misguided, meritless, and formed no part of the Opinion's holding dismissing Castillo's second action.  Indeed, Sheraton argues throughout its instant motion that the second action was supposedly in "clear violation of the plain language of § 1359."  If that were true, then Sheraton had no need to conduct *any* discovery.  Sheraton could have simply made legal arguments based upon the language of § 1359 alone.  See <u>Ericsson</u>, 179

F.R.D. at 334 ("Plaintiff was correct to complain of defendants' gilt-edged discovery, much of which was unproductive and unnecessary.").

Accordingly, Sheraton is entitled, at most, to no more than nominal (if any) relief under § 1919.

## II.  CASTILLO'S CROSS-MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 SHOULD BE GRANTED

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sheraton's counsel should be sanctioned under § 1927 on two independent grounds.

First, Sheraton's counsel should be sanctioned for unreasonably and vexatiously multiplying proceedings in the first action. See, e.g., Montgomery & Larmoyeux v. Philip Morris, Inc., 19 F. Supp. 2d 1334, 1335 (S.D. Fla. 1998) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.... This Court has indicated that motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.' Thus, even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees.") (citations omitted).

Sheraton affirmatively invoked this Court's diversity jurisdiction in the first action through its counterclaims. Nevertheless, Sheraton's counsel privately sought evidence to try to upset that jurisdiction in the event that this Court disagreed with Sheraton's summary judgment motion (which is what occurred). Sheraton's motivation for doing so is not genuinely disputed: Sheraton sought unreasonably to delay Castillo's ability to get to trial. See Baker v. Urban

17

Outfitters, Inc., 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006), aff'd, 249 Fed. Appx. 845 (2d Cir.

2007) ("[A]n award under § 1927 is proper 'when the attorney's actions are so completely

without merit as to require the conclusion that they must have been undertaken for some

improper purpose such as delay.'") (citation omitted).

 Although Sheraton's counsel has not yet been placed under oath, the record indicates

that Sheraton's counsel also strategically sat on its evidence of diversity defects from the Court,

and from Castillo, until after the Court denied Sheraton's summary judgment motion. Itel

Containers Int'l Corp. v. Puerto Rico Marine Mgmt., Inc., 108 F.R.D. 96, 99, 103 (D.N.J. 1985)

(awarding sanctions under § 1927 where defendant delayed disclosure of diversity jurisdiction

defect until after discovery and after the plaintiff moved for summary judgment).

 Moreover, the record shows that Sheraton's counsel had its evidence in hand before this

Court issued its summary judgment ruling. (Bernstein Decl. at ¶¶ 17-27.) The record

additionally shows that Sheraton tried to mislead this Court into thinking that Sheraton had only

recently discovered the alleged diversity defects after the summary judgment ruling and in

preparation for trial. (Id. at ¶¶ 27-31.) Sheraton's practice of "hiding the ball" was repeatedly

on display before this Court. See Baker, 431 F. Supp. 2d at 362 ("An award made under § 1927

also must be supported by a finding of bad faith similar to that necessary to invoke the court's

inherent power. In considering whether there has been bad faith, the court may consider the

manner in which the action was brought and the manner in which it was litigated. Bad faith

may be inferred when 'an attorney engages in conduct that is so objectively unreasonable that

he necessarily must have been acting in bad faith.'") (citations omitted).

 Sheraton asked this Court to exercise its power and award summary judgment to

Sheraton in the first action even though Sheraton had evidence of a lack of subject matter

18

jurisdiction. Sheraton's counsel deserve to be sanctioned in connection with their conduct in the first action under § 1927. Sheraton then brought a motion to dismiss as a strategic move to cause undue delay and costs to Castillo. Sheraton's counsel's hope was admittedly to get a "do-over." Sheraton forced Castillo to fight to maintain its trial and not to lose that trial to duplicative, time-consuming, wasteful, and objectively "unprofessional" (in the words of this Court) additional discovery and motion practice. Itel, 108 F.R.D. at 103; see also Baker, 431 F. Supp. 2d at 366 ("Weingrad withheld evidence regarding Baker's past licensing activities from Urban while continuing to represent to the Court – falsely, it now appears – that Baker had not licensed any photographs prior to this action."). Castillo should be reimbursed its reasonable fees and costs in having to litigate just to get Sheraton back to the point of trial, where Sheraton belonged. It should not have taken a decision from this Court to remind Sheraton of its professional responsibilities.

Sheraton's counsel should also be sanctioned in connection with Sheraton's instant § 1919 motion, in which Sheraton has unreasonably and vexatiously multiplied proceedings with a frivolous demand for $230,000 in "costs." As explained above, Sheraton's argument that "extraordinary circumstances" exist here is not grounded in any objective and good faith review of the record. Sheraton's counsel should be sanctioned under § 1927 for putting Castillo to the trouble – only one month before trial in the state court action – of having to respond to Sheraton's motion.

Accordingly, Castillo respectfully requests reimbursement of its reasonable attorneys' fees and costs. Castillo will provide a declaration and itemized breakdown of such fees and costs promptly after issuance of an Order granting this cross-motion.

19

## **CONCLUSION**

Sheraton never should have taken up the Court's and Castillo's time with this kind of

motion practice.  For the foregoing reasons, Castillo respectfully requests that Sheraton's

motion for "just costs" under 28 U.S.C. § 1919 be denied in all respects; and Castillo further

respectfully requests that its motion for sanctions from Sheraton's counsel pursuant to 28 U.S.C.

§ 1927 be granted in all respects; and Castillo additionally respectfully requests such other and

further relief as the Court deems just and proper.

Dated: New York, New York
      July 2, 2010

                      PRYOR CASHMAN LLP

                      By: _____

                          Todd E. Soloway
                          tsoloway@pryorcashman.com
                          William L. Charron
                          wcharron@pryorcashman.com
                          Joshua D. Bernstein
                          jdbernstein@pryorcashman.com
                      7 Times Square
                      New York, New York 10036-6569
                      (212) 421-4100
                      *Attorneys for Plaintiff Castillo Grand, LLC*