UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CASTILLO GRAND LLC,  :

    Plaintiff,  :

  : 09 CV 7197 (RPP)

-against-  :

SHERATON OPERATING CORPORATION,  :

    Defendant.  :
------------------------------------x

### DEFENDANT SHERATON OPERATING CORPORATION'S (1) REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR JUST COSTS PURSUANT TO 28 U.S.C. § 1919 AND (2) MEMORANDUM OF LAW IN OPPOSITION TO CASTILLO GRAND, LLC'S CROSS-MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927

BICKEL & BREWER

William A. Brewer III (WB 4805)
James S. Renard (*pro hac vice*)
Alexander D. Widell (AW 3934)
Eric P. Haas (*pro hac vice*)
767 Fifth Avenue, 50th Floor
New York, New York 10153
Telephone: (212) 489-1400
Facsimile: (212) 489-2384

ATTORNEYS FOR DEFENDANT
SHERATON OPERATING
CORPORATION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................i

I. PRELIMINARY STATEMENT .................................................................................1

II. ARGUMENT AND AUTHORITIES ..........................................................................2

    A. An Award of Costs And Attorneys' Fees Is Fair And Just Under The Circumstances ..................................................................................................2

        1. Castillo's "Concealment" Theory Is Legally Irrelevant, Without Factual Support, And Belied By The Evidence .........................................3

        2. Castillo Commenced The Second Action In Bad Faith ...........................6

    B. Sheraton Should Be Awarded Its Attorneys' Fees As Part Of Its Just Costs. ............................................................................................................9

    C. The Other Costs Sheraton Seeks are Recoverable ..............................................10

    D. Castillo's Cross-Motion For Sanctions Pursuant To 28 U.S.C. § 1927 Should Be Denied. .........................................................................................12

III. REQUEST FOR RELIEF .........................................................................................13

# TABLE OF AUTHORITIES

Page(s)

CASES

*Ali v. Prestige Window & Door Installation*,
   626 F. Supp. 2d 1259 (S.D. Fla. 2009) ............................................................................. 12

*Anderson v. City of New York*,
   132 F. Supp. 2d 239 (S.D.N.Y. 2001) ............................................................................... 12

*Callicrate v. Farmland Indus., Inc.*,
   139 F.3d 1336 (10th Cir. 1998) ........................................................................................ 12

*Castillo Grand LLC v. Sheraton Operating Corporation*,
   No. 06 Civ. 5526(RPP), 2009 WL 2001441 (S.D.N.Y. July 9, 2009) ................................ 6

*Castillo Grand LLC v. Sheraton Operating Corporation*,
   No. 09CV7197 (RPP) 2009 WL 4667104 (S.D.N.Y. Dec. 9, 2009) ...................... 7, 12, 13

*Correspondent Serv. Corp. v. J.V.W. Investment Ltd.*,
   No. 99 Civ. 8934 (RWS), 2004 U.S. Dist. LEXIS 19341 (S.D.N.Y. Sept. 30 2004) ........ 9

*Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*,
   No. 99 Civ. 8934, 2004 WL 2181087 (S.D.N.Y. Sept. 29, 2004) ..................................... 10

*Dela Rosa v. 610-620 West 141 LLC*,
   No. 08 Civ. 8080 (PKL), 2009 U.S. Dist. 55058 (S.D.N.Y. June 24, 2009) ...................... 9

*FTSS Korea v. First Tech. Safety Sys., Inc.*,
   254 F.R.D. 78 (E.D. Mich. 2008) ............................................................................ 9, 10, 11

*Grupo Dataflux v. Atlas Global Group, L.P.*,
   541 U.S. 567 (2004) ....................................................................................................... 8, 9

*Handelsman v. Bedford Village Associates Ltd. Partnership*,
   213 F.3d 48 (2d Cir. 2000) .................................................................................................. 9

*Kahn v. Superior Chicken & Ribs, Inc.*,
   331 F. Supp. 2d 115 (E.D.N.Y. 2004) ............................................................................... 13

*Oliveri v. Thompson*,
   803 F.2d 1265 (2d Cir. 1986) ............................................................................................ 13

*Schlaifer Nance & Co. v. Estate of Warhol*,
   194 F.3d 323 (2d Cir. 1999) .............................................................................................. 13

*Solloway v. Ellenbogen,*
    121 F.R.D. 29 (S.D.N.Y. 1988)................................................................................................9

*United States v. Atkinson,*
    No. 94-7316, 2008 U.S. Dist. LEXIS 4654 (E.D. Penn. Jan. 23, 2008).........................11, 12

*Z Trim Holdings, Inc. v. Fiberstar, Inc.,*
    No. 06-C-361-C, 2007 U.S. Dist. LEXIS 38846 (W.D. Wis. May 23, 2007)..................11, 12

Defendant Sheraton Operating Corporation ("Sheraton") files this Reply Memorandum of Law in Further Support of its Motion for Just Costs Pursuant to 28 U.S.C. § 1919, and in opposition to the Cross-Motion of Plaintiff Castillo Grand, LLC ("Castillo") For Sanctions Pursuant to 28 U.S.C. § 1927, as follows:

I.

## PRELIMINARY STATEMENT

Castillo has failed to show that Sheraton is not entitled to recover its just costs incurred in this Second Action pursuant to Section 1919.[1] As demonstrated in Sheraton's opening brief, Castillo was repeatedly warned that, pursuant to Section 1359 and controlling authority, Castillo could not "cure" the jurisdictional defects that required the dismissal of the First Action. Nonetheless, Castillo disregarded those warnings and applicable law and filed this Second Action. As a result, Sheraton was forced to incur significant costs, including attorneys' fees, in: (i) investigating Castillo's efforts to manufacture diversity jurisdiction; (ii) conducting discovery regarding Castillo's jurisdictional allegations; and (iii) preparing its successful motion to dismiss. Based on the very authorities that Castillo knew of, but ignored, this Court granted Sheraton's motion and dismissed the Second Action.

Apparently ascribing to a strategy of "the best defense is a good offense," Castillo has cross-moved for sanctions pursuant to 28 U.S.C. § 1927 ("Section 1927"), alleging that Sheraton engaged in improper conduct in the First Action, which was dismissed for lack of subject matter jurisdiction in August 2009. In particular, Castillo tries to deflect attention away from the fact that it never should have filed Second Action by wrongfully accusing Sheraton of not moving to dismiss the First Action (which Castillo also improperly filed in federal court) sooner. Castillo's

---

[1] Capitalized terms used herein shall have the meanings ascribed to them in Sheraton's opening brief.

1

theory, however, is not supported by any evidence. Moreover, the premise of Castillo's theory – that Sheraton intentionally waited until the Court denied its motion for summary judgment – is easily disproved because this Court did not deny Sheraton's motion for summary judgment; it granted it in substantial part, dismissing four of the claims asserted by Castillo in the First Action. Thus, Castillo's defenses to filing this Second Action and its cross-motion with respect to the First Action are without merit.

Accordingly, for the reasons set forth herein and in Sheraton's opening brief, Sheraton's motion for just costs pursuant to Section 1919 should be granted, and Castillo's cross-motion for sanctions pursuant to Section 1927 should be denied.

## II.

## ARGUMENT AND AUTHORITIES

A.     An Award of Costs And Attorneys' Fees Is Fair And Just Under The Circumstances

In its opening brief, Sheraton demonstrated that, pursuant to Section 1919, Sheraton should be awarded its just costs, including reasonable attorneys' fees, which were caused by Castillo's improper invocation of the Court's subject matter jurisdiction in this Second Action.

In response to Sheraton's motion, Castillo claims that an award of costs would be unjust for two reasons. First, Castillo argues that "justice does not require an award of costs because Sheraton concealed Castillo's jurisdictional defect until after this Court denied Sheraton's motion for summary judgment."[2] Second, Castillo argues that it brought the Second Action in

---

[2] *See* Castillo Opp. at 2 ("Sheraton also privately sought evidence to try to disturb this Court's diversity jurisdiction as a 'Plan B' in the event that this Court denied Sheraton's request for summary judgment."). *See also id.* at 5 ("the record reflects that Sheraton's counsel had been sitting on its private evidence strategically, as part of a 'Plan B' in the event that this Court were to deny its summary judgment motion (which is what happened)").

good faith in order "to try to avoid an egregious waste of judicial and party resources." Neither of Castillo's arguments has any merit.

### 1. Castillo's "Concealment" Theory Is Legally Irrelevant, Without Factual Support, And Belied By The Evidence.

Castillo's "concealment" theory is without merit for four reasons.

First, despite Castillo's assertion that Sheraton's counsel "knew" of Castillo's jurisdictional defect before this Court issued its summary judgment ruling,[3] there is absolutely no evidence supporting Castillo's allegation.[4] Sheraton was straightforward and candid with the Court regarding the timing of, and circumstances surrounding, its discovery of Castillo's jurisdictional defect in the First Action. On August 5, 2009, Sheraton advised the Court in connection with its motion to dismiss the First Action that it had "recently discovered that this Court lacks subject matter jurisdiction because there is not complete diversity between the parties."[5] In this regard, in connection with its preparation of the pretrial order required by the Court in the First Action, the parties were required to set forth the basis of subject matter jurisdiction.[6] As Sheraton's counsel advised the Court during a telephonic hearing on August 10, 2009, shortly after Sheraton moved to dismiss the First Action:

---

[3] Castillo Opp. at 2 (emphasis in original).

[4] The "record" upon which Castillo relies consist of the specious arguments and innuendo set forth in the declaration of Joshua Bernstein, one of Castillo's attorneys, which was previously submitted to the Court in 2009 in connection with Sheraton's motion to dismiss the Second Action for lack of subject matter jurisdiction.

[5] See letter from William A. Brewer III to the Honorable Robert Patterson, Jr., dated August 5, 2009, a true and correct copy of which is attached as Exhibit ("Ex.") A to the accompanying Declaration of James S. Renard, dated July 30, 2010 (the "Renard Decl.").

[6] See Section 3.A. of the Individual Practices of Judge Robert P. Patterson, Jr. ("Unless otherwise ordered by the Court, within 30 days after the completion of discovery in a civil case, the parties shall submit to the Court for its approval a joint pretrial order, which shall include the following: . . . iii. A brief statement by plaintiff as to the basis of subject matter jurisdiction, and

3

> Your Honor, in preparation for the pretrial order, I asked that we investigate, very thoroughly, to ensure that we had diversity jurisdiction because the last thing we wanted to do was to go through a trial and have a plaintiff – because I think this came down recently in a case – have a plaintiff who, on appeal, brought to the Court's attention a lack of diversity jurisdiction. Thereby making futile the trial that had occurred and the result that had been obtained. Because, as the Court well knows, orders and judgments are void when a Court doesn't have jurisdiction. We brought it immediately to the Court's attention. We did not want to have the accusation that we had this in our hip pocket, that we were using it tactically, and that we did what we thought we needed to do, and that was to file in a Court that had appropriate jurisdiction.[7]

Remarkably, Castillo asserts that the following – taken from the declaration of Castillo's counsel, Joshua Bernstein, dated September 25, 2009 – demonstrates that Sheraton had knowledge of Castillo's diversity defect prior to the resolution of Sheraton's motion for summary judgment, and that such statements are at odds with the foregoing statements of Sheraton's counsel:

> 21. During a break in the deposition, I asked Mr. Coleman why his firm had not been involved in much of the discovery that had taken place over the course of the last three years. In response, Mr. Coleman informed me that Bryan Cave had been 'working behind the scenes' and remained very involved in the case.
>
> 22. I then asked Mr. Coleman if he would be attending the trial scheduled on September 8, 2009.
>
> 23. Mr. Coleman responded by saying "we'll see if there is a trial."
>
> 24. I asked Mr. Coleman why he said that, reminding him that even in the unlikely event that the Court granted Sheraton's then-pending motion for summary judgment, Castillo still maintained claims relating to Sheraton's wrongful termination of the parties' Management Contract that were not the subject of Sheraton's motion for summary judgment and were worth in excess of $31 million that would be tried on that date.

---

a brief statement by each other party as to the presence or absence of subject matter jurisdiction.").

[7] See Transcript of Telephonic Conference dated August 10, 2009, at 9:14-10:4. A true and correct copy of the transcript is attached to the Renard Decl. as Ex. B.

25. Mr. Coleman responded by saying, "Well, I guess we'll just see what happens."

26. Despite further efforts, Mr. Coleman refused to elaborate.

Nothing that Mr. Coleman said to Mr. Bernstein had anything to do with the jurisdictional defect that Sheraton identified and promptly raised with the Court approximately one month later. The fact that the Bryan Cave law firm was "working behind the scenes" was not something nefarious, as Castillo would suggest, but rather reflected the fact that the Bickel & Brewer law firm was lead counsel. Similarly, the fact that there may not be a trial following the dismissal of Castillo's claims on summary judgment – even if certain other claims remained in the case – is not evidence that Sheraton was aware of Castillo's jurisdictional defects.

Second, Castillo's "concealment" argument is based on Castillo's selective use of snippets of the transcript from oral argument on Sheraton's motion to dismiss the Second Action, held on October 23, 2009. For example, Castillo states that Sheraton's counsel "moved to dismiss the first federal action strategically to try to get a 'do-over' . . . after this Court had denied Sheraton's motion for summary judgment."[8] To the contrary, as the record reflects, Sheraton's counsel was concerned that the parties *not* have to "redo a bunch of things that have already been done."[9] Castillo also alleges that "this Court observed . . . that Sheraton was trying to 'hide the ball' regarding its ulterior motive to delay trial and cause waste."[10] The portion of

---

[8] *See* Castillo Opp. at 12.

[9] *See* Transcript of Oral Argument dated October 23, 2009, at 38:10-24 ("Other than the fact that, in my career, I have had the problem of someone of being involved in a case where someone – in a federal district court – where there was no jurisdiction, and then being faced with a re-do. . . . I have a client sitting here, Mr. Keith Grossman, who is deputy general counsel at the Sheraton Operating Company, he [has] no desire to see me redo a bunch of things that have already been had and done. That's too expensive. That's not what we do for a living."). A true and correct copy of the transcript is attached to the Renard Decl. as Ex. C.

[10] *See* Castillo Opp. at 2-3.

the transcript, however, upon which Castillo selectively cites had nothing whatsoever to do with the timing of Sheraton's motion to dismiss the Second Action. Rather, as the Court may recall, the Court was questioning Sheraton's counsel as to why Sheraton could not immediately disclose to Castillo the precise nature of any motions it intended to make in the State Court Action.[11]

Third, the factual predicate for Castillo's "concealment" theory – that Sheraton played a "wait and see" game with respect to its motion for summary judgment, and only decided to raise the jurisdictional defect after the Court denied the motion – is false. To the contrary, in connection with Sheraton's motion for summary judgment with respect to Castillo's five design-related claims,[12] the Court granted summary judgment in favor of Sheraton on four of those claims.[13]

Fourth, in any event, regardless of the timing of the motion that raised the jurisdictional defect in the First Action, Castillo was not justified in filing the Second Action with knowledge that the jurisdictional defect could not be "cured."

2. **Castillo Commenced The Second Action In Bad Faith.**

Castillo asserts that its decision to file the Second Action was motivated by its desire to maintain its September 8, 2009 trial date,[14] and that "'justice' is not served by taxing Castillo for

---

[11] *See* Ex. C, Transcript of Oral Argument dated October 23, 2009, at 35:21-52:2. Notably, Sheraton did not make any motions for summary judgment in the State court action, which began trial in the matter on July 19, 2010.

[12] *See Castillo Grand LLC v. Sheraton Operating Corporation*, No. 06 Civ. 5526(RPP), 2009 WL 2001441, at *1 (S.D.N.Y. July 9, 2009) ("On December 8, 2008, Sheraton moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Claims One through Five (the 'Design Claims') of the Amended Complaint").

[13] *See id.* at *11 ("Sheraton's motion for summary judgment is granted on Claims Two, Three, Four, and Five of the Amended Complaint and denied on Claim One.").

[14] *See* Castillo Opp. at 1 ("Castillo's decision to file the second action before this court was motivated by one thing: the desire to maintain the September 8, 2009 trial date and to avoid unconscionable waste.").

having a good faith and thoughtful position that was motivated by protecting the parties and the courts from undue waste."[15] Castillo's argument misses the mark by a wide margin. Indeed, rather than avoiding undue waste, Castillo's filing of the Second Action caused *additional* waste.

Castillo's unilateral concerns about wasted litigation costs (brought on by itself)[16] could not, as a matter of well-settled controlling law, be the key that unlocked the door to federal court jurisdiction. As this Court held in granting Sheraton's motion to dismiss the Second Action:

> In explaining its interpretation of §1359, the Second Circuit has noted that "there can be no excuse for engulfing the already burdened federal courts with cases involving controversies between citizens of the same state, who seek to invoke federal jurisdiction through sham transactions. Section 1359 is merely the last of a series of enactments embodying that clear and salutary principle.[17]

Simply put, no matter how strong Castillo's unilateral desire to litigate its claims in federal court, the Second Action stood no chance of clearing the jurisdictional hurdle, a fate of which Castillo was repeatedly warned. As the Court explained in its dismissal of the Second Action:

> [A]t the August 10, 2009 teleconference, counsel for Sheraton indicated that, based on their research, any attempt by Castillo to cure the diversity defects would violate 28 U.S.C. § 1359. Counsel for Sheraton further indicated that it would need an opportunity to take discovery on the transactions Castillo planned to undertake in order to cure the diversity defects and that Sheraton would likely make a motion to dismiss any re-filed action, again for lack of subject matter jurisdiction.[18]

---

[15] Castillo Opp. at 14.

[16] Indeed, but for Castillo's improper filing of the First Action, it would not have had a federal court trial date to protect.

[17] *Castillo Grand LLC v. Sheraton Operating Corporation*, No. 09CV7197 (RPP) 2009 WL 4667104, at *2 (S.D.N.Y. Dec. 9, 2009), quoting *O'Brien v. AVCO Corp.*, 425 F.2d 1030, 1034 (2d Cir. 1969).

[18] Opinion and Order dated December 9, 2009, at 4-5 (Docket Entry 35).

Rather than heed Sheraton's warning or, at a minimum, conduct its own research on the jurisdictional issue, Castillo made a tactical decision to file the Second Action. Thus, Castillo's alleged motive to "protect its imminent trial date" – a futile endeavor in light of Section 1359 and controlling case law – cannot be deemed to be taken in good faith.

Nor was, as Castillo contends, its filing of the Second Action "supported by closely analyzed case law."[19] To the contrary, the Court held that "[t]he law is clear in this circuit that transactions engineered by a party for the purpose of creating federal diversity jurisdiction are precisely the sort of conduct prohibited by § 1359,[20] and that "[i]t is beyond dispute . . . that Castillo's reorganization was undertaken 'to invoke the jurisdiction' of this Court as contemplated by the plain language of § 1359."[21] The Court also held that "Castillo's narrow reading of § 1359 is contrary to the broad language or the Second Circuit precedent and contrary to the plain language of the statute,"[22] and that the *Grupo* case in no way 'endorses' Castillo's deliberate efforts to reconstitute its citizenship for the sole purpose of creating federal subject matter jurisdiction."[23] The Court concluded that "Castillo's actions have violated 28 U.S.C. § 1359 and nothing in the cases relied on by Castillo compels a contrary conclusion."[24]

Finally, Castillo argues that "the diversity question raised in this case is 'highly unique."[25] That contention, however, is belied by this Court's ruling and the controlling

---

[19] *See* Castillo Opp. at 13.

[20] Opinion at 8-9.

[21] *Id.* at 7.

[22] Opinion and Order at 15, 21.

[23] *Id.* at 21 (emphasis added).

[24] *Id.* (emphasis added). Castillo appealed the Court's Order, but, after filing an unsuccessful motion to extend the appeal indefinitely until the conclusion of the State Court Action, dismissed its appeal with prejudice.

[25] Castillo Opp. at 13.

8

authority from the Second Circuit and the Supreme Court holding that a limited liability company's citizenship for diversity jurisdiction purposes is the citizenship of each of its members.[26]

B. **Sheraton Should Be Awarded Its Attorneys' Fees As Part Of Its Just Costs.**

Sheraton also demonstrated that, based on the "extraordinary circumstances" of the case – *i.e.*, Castillo's commencement of the Second Action despite its knowledge of controlling law that made dismissal inevitable, and the undue financial burden imposed on Sheraton as a result of Castillo's conduct – Sheraton should be awarded its attorney's fees as part of its just costs.[27] In response, Castillo argues that "extraordinary circumstances" warranting an award of attorneys' fees are limited to those cases in which a party practices "fraud or trickery" on the court or opposing party.[28]

Castillo is wrong. While the two cases it cites provide that "fraud or trickery" may constitute an extraordinary circumstance warranting an award of attorneys' fees, such a finding is

---

[26] *See, e.g., Handelsman v. Bedford Village Associates Ltd. Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000) ("For purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership."); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586 (2004) ("Although the [Supreme] Court has never ruled on the issue, Courts of Appeals have held the citizenship of each member of an LLC counts for diversity purposes.").

[27] *See* Sheraton Mem. at 10-12; *see also See Correspondent Serv. Corp. v. J.V.W. Investment Ltd.*, No. 99 Civ. 8934 (RWS), 2004 U.S. Dist. LEXIS 19341, at *47-51 (S.D.N.Y. Sept. 30 2004) (awarding attorneys' fees pursuant to 28 U.S.C. § 1919); *FTSS Korea*, 254 F.R.D. at 79 ("[T]he Court *does* have the authority to award reasonable costs, including attorneys' fees, when a matter is dismissed for want of jurisdiction.") (emphasis in original); *Solloway v. Ellenbogen*, 121 F.R.D. 29, 30 (S.D.N.Y. 1988) ("The court determines that an appropriate sanction in this case shall consist of reimbursement to defendants of their reasonable attorneys' fees and costs in bringing the motion to dismiss."); *Dela Rosa v. 610-620 West 141 LLC*, No. 08 Civ. 8080 (PKL), 2009 U.S. Dist. 55058 at *14-18 (S.D.N.Y. June 24, 2009) (awarding attorneys' fees for improperly filing federal court case without jurisdiction); *Correspondent Serv. Corp.*, 524 F. Supp. 2d at 423 (awarding attorneys' fees pursuant to 28 U.S.C. § 1919 for the time period after plaintiff was notified of lack of jurisdiction because plaintiff continued to contest jurisdiction).

[28] *See* Castillo Opp. at 14.

9

not required. Indeed, in the cases cited by Sheraton (which post-date the cases relied on by Castillo), no such showing was required. For example, in *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*,[29] the court held that "extraordinary circumstances" warranted an award of attorneys' fees pursuant to 28 U.S.C. § 1919 because:

> The attachment of SBBT's assets – *obtained under circumstances that suggest that Waggonner had reason to know that subject matter jurisdiction was lacking when it was, in fact, lacking* – was wrongful, and as a result of the attachment SBBT has sustained a substantial financial burden by virtue of its lack of access to the funds at issue. These circumstances are sufficiently extraordinary to warrant the award of both costs and attorneys' fees.[30]

Accordingly, Sheraton is entitled to an award of attorneys' fees pursuant to 28 U.S.C. §1919.[31]

## C. The Other Costs Sheraton Seeks are Recoverable

In its main brief, Sheraton demonstrated that it is entitled to the costs it incurred in connection with its investigation of Castillo's jurisdictional allegations, the discovery with respect to the transactions Castillo undertook in its effort to "cure" the jurisdictional defect, and the successful motion it made to dismiss the Second Action.[32] Those costs include court

---

[29] No. 99 Civ. 8934, 2004 WL 2181087 (S.D.N.Y. Sept. 29, 2004) (RWS).

[30] 2004 WL 2181087, at *16 (emphasis added). *See also FTSS Korea v. First Tech. Safety Sys., Inc.*, 254 F.R.D. 78 (E.D. Mich. 2008). Castillo erroneously asserts that the Court in *FTSS Korea* did not award attorneys' fees pursuant to 28 U.S.C. § 1919, but rather, pursuant to Fed. R. Civ. P. 41(a)(2). *See* Castillo Opp. at 14, n.2. Castillo is wrong. In *FTTS Korea*, the Court held that it had "the authority to award reasonable costs, including attorneys' fees, when a matter is dismissed for want of jurisdiction," and specifically cited 28 U.S.C. § 1919 as a source of that authority. *See FTTS Korea*, 254 F.R.D. at 79.

[31] Even under Castillo's manufactured standard, Sheraton should be awarded its attorneys' fees, as the record shows that Castillo attempted to commit a fraud on the court. The most egregious example is when Castillo tried to convince the court that Barbara Santangelo, one of the diversity-destroying individuals, was a Florida citizen because she paid income tax in Florida. *See* Letter from Todd. E. Soloway to Hon. Robert Patterson, dated August 7, 2009, at 2 (Santangelo "has paid both Florida property and income taxes."). A true and correct copy of Mr. Soloway's letter is attached to the Renard Decl. as Ex. D. Of course, Florida does not have a state income tax.

[32] *See* Sheraton Mem. at 6-8.

reporting costs, reproduction costs, subpoena-related costs, research costs and travel and lodging costs, all taxable pursuant to 28 U.S.C. ¶1919.[33]

Castillo makes two arguments in response, neither of which has any merit. First, Castillo argues that aside from "deposition transcript expenses," the other costs sought by Sheraton – e.g., reproduction costs, subpoena-related expenses and electronic research costs – are not taxable.[34] Castillo is wrong. Reproduction costs are taxable pursuant to 28 U.S.C. §1919,[35] as are subpoena-related costs[36] and computerized research costs.[37]

Second, Castillo asserts that Sheraton should not recover the costs it incurred in connection with its discovery relating to the lack of economic substance to Castillo's jurisdiction-related transactions because the arguments raised by Sheraton "in this regard were

---

[33] See, e.g., FTSS Korea v. First Tech. Safety Sys., Inc., 254 F.R.D. 78, 80 (E.D. Mich. 2008) ("[T]he Court believes that the defendant should be reimbursed for the reasonable expenses incurred in litigating the jurisdiction question."); United States v. Atkinson, No. 94-7316, 2008 U.S. Dist. LEXIS 4654, at *9-11 (E.D. Penn. Jan. 23, 2008) (awarding $28,275.99 in deposition costs pursuant to 28 U.S.C. § 1919); Z Trim Holdings, Inc. v. Fiberstar, Inc., No. 06-C-361-C, 2007 U.S. Dist. LEXIS 38846, at *5-7 (W.D. Wis. May 23, 2007) (awarding subpoena and exemplification costs pursuant to 28 U.S.C. § 1919).

[34] See Castillo Opp. at 16 ("the only itemized expenses claimed by Sheraton that are arguably recognizable as 'costs' are $5,405 in deposition transcript expenses.").

[35] Callicrate v. Farmland Indus., Inc., 139 F.3d 1336, 1340-41 (10th Cir. 1998) (awarding deposition costs pursuant to Section 1919); Ali v. Prestige Window & Door Installation, 626 F. Supp. 2d 1259, 1263-64 (S.D. Fla. 2009) (same); Atkinson v. Penn. Shipbuilding Co., 2008 U.S. Dist. LEXIS 4654, at *9 (E.D. Pa. Jan. 22, 2008) (same).

[36] See Z Trim Holdings, Inc. v. Fiberstar, Inc., 2007 U.S. Dist. LEXIS 38846, at *5 (W.D. Wis. May 23, 2007) (awarding subpoena costs under Section 1919); Anderson v. City of New York, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001) (awarding costs for service under Section 1920).

[37] See Anderson v. City of New York, 132 F. Supp. 2d 239, 247 (S.D.N.Y. 2001) ("Although defendants are correct that costs for computerized research are not taxable pursuant to 20 U.S.C. § 1920, in this circuit they are considered part of attorneys' fees, because, in theory, an attorney will complete a research assignment faster with the aid of computerized databases than without such aides. Accordingly, the Court will award the costs of computerized research.");

misguided, meritless and formed no part of the Opinion's holding dismissing Castillo's Second Action."[38] Castillo's argument is specious. The Court, in granting Sheraton's motion to dismiss the Second Action, held that it need not reach Sheraton's arguments concerning the validity of the underlying transactions because of its ruling that the transactions violated 28 U.S.C. §1359.[39] The limited discovery conducted by Sheraton, however, was necessary at the time in order to uncover the true facts behind Castillo's jurisdictional maneuverings and to properly prepare the motion to dismiss.[40] Moreover, and contrary to Castillo's assertion that Sheraton's transaction-related arguments were "misguided" and "meritless," the Court stated that those arguments "do not appear to be groundless."[41]

For the foregoing reasons, Sheraton should be awarded its just costs as set forth in its principal brief.

D.  **Castillo's Cross-Motion For Sanctions Pursuant To 28 U.S.C. § 1927 Should Be Denied.**

Eleven months after the dismissal of the First Action, and in response to Sheraton's motion for just costs incurred in the Second Action, Castillo asserts that the Court should impose sanctions against Sheraton pursuant to 28 U.S.C. § 1927 "for unreasonably and vexatiously

---

[38] Castillo Opp. at 16.

[39] *See Castillo Grand LLC v. Sheraton Operating Corporation*, No. 09CV7197 (RPP) 2009 WL 4667104, at *7.

[40] *See Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1340-41 (10th Cir. 1998) ("It would therefore be inequitable to essentially penalize a party who happens to prevail on a dispositive motion by not awarding costs associated with that portion of discovery which had no bearing on the dispositive motion, but which appeared otherwise necessary at the time it was taken for proper preparation of the case. ... The fact that much of the product of discovery was rendered unnecessary for use in the district court following the dismissal is immaterial") (awarding deposition costs pursuant to Section 1919).

[41] *See Castillo Grand LLC v. Sheraton Operating Corporation*, No. 09CV7197 (RPP) 2009 WL 4667104, at *7.

multiplying proceedings" in the First Action.[42] Under Section 1927, sanctions should not be awarded unless "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."[43] In this case, there is no basis for Castillo's request for sanctions under Section 1927.

In support of its cross-motion, Castillo repeats its factually barren assertion that Sheraton's counsel "strategically sat on its evidence of diversity defects . . . until after the Court denied Sheraton's motion for summary judgment."[44] As demonstrated above, there is no credible proof to support Castillo's allegations. Indeed, the proof that does exist – *i.e.*, the Court's *granting* of Sheraton's motion for summary judgment – contradicts Castillo's theory. Accordingly, Castillo's cross-motion for sanctions should be denied.

## III.

## REQUEST FOR RELIEF

For the foregoing reasons, Sheraton respectfully requests that the Court: (i) grant its motion for just costs pursuant to 28 U.S.C. § 1919; (ii) award Sheraton at least $230,000 in just costs incurred in the Second Action; (iii) deny Castillo's Cross-Motion for Sanctions Pursuant to 28 U.S.C. § 1927; and (iv) grant Sheraton such additional relief to which it may be entitled.

---

[42] Castillo Opp. at 17.

[43] *See Int'l Brotherhood of Teamsters*, 948 F.2d 1138, 1145 (2d Cir. 1991); *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115 (E.D.N.Y. 2004); *Oliveri v. Thompson*, 803 F.2d 1265, 1273-74 (2d Cir. 1986); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338-39 (2d Cir. 1999). As Sheraton demonstrated in its opening brief, Castillo's conduct in filing the Second Action not only warrants an award of attorneys' fees as just costs, but also warrants sanctions pursuant to Section 1927.

[44] *Id.* at 18.

Dated: New York, New York
July 30, 2010

                Respectfully submitted,

                **BICKEL & BREWER**

By:  /s/ William A. Brewer III
      William A. Brewer III (WB 4805)
      James S. Renard (*pro hac vice*)
      Alexander D. Widell (AW 3934)
      Eric P. Haas (*pro hac vice*)
      767 Fifth Avenue, 50th Floor
      New York, New York 10153
      Telephone: (212) 489-1400
      Facsimile: (212) 489-2384

      **ATTORNEYS FOR DEFENDANT**
      **SHERATON OPERATING**
      **CORPORATION**