UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASTILLO GRAND, LLC,

                Plaintiff,

       - against -

SHERATON OPERATING CORPORATION,

                Defendant.

09 CV 7197 (RPP) (GWG)

## **PLAINTIFF CASTILLO GRAND, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR RECONSIDERATION**

PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036-6569
(212) 421-4100

*Attorneys for Plaintiff*

*Of Counsel:*
    Todd E. Soloway
    tsoloway@pryorcashman.com
    Lisa M. Buckley
    lbuckley@pryorcashman.com
    Joshua D. Bernstein
    jdbernstein@pryorcashman.com
    Bryan T. Mohler
    bmohler@pryorcashman.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I. CASTILLO'S MOTION FOR RECONSIDERATION
OF THE PORTION OF THE ORDER AWARDING
SHERATON ATTORNEYS' FEES SHOULD BE GRANTED ................................................. 2

A. Sheraton Offers No "Extraordinary Circumstances"
Substantiating An Award Of Attorneys' Fees Under 28 U.S.C. § 1919 ..................................... 2

B. Sheraton's Continuing Inability To Justify Its Own Legal
Fees Alone Warrants A Hearing Prior To An Award of Attorneys' Fees ..................................... 5

II. CASTILLO IS ENTITLED TO RECONSIDERATION OF THE
COURT'S DENIAL OF ITS CROSS-MOTION FOR SANCTIONS ........................................ 7

A. Sheraton Admits That It Has Engaged In The
Very Wasteful And Unprofessional Conduct That
This Court Expressly Warned The Parties To Avoid ................................................................... 7

B. Sheraton's Counsel Remains Unwilling To
Be Placed Under Oath To Explain The Circumstances
Surrounding Its Supposed Eve of Trial Discovery Of Jurisdictional Defects ............................ 9

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

Barron's Education Series, Inc. v. Hiltzik, N.S.,
    987 F. Supp. 224 (E.D.N.Y. 1997) ................................................................ 2, 4

Blum v. Stenson,
    465 U.S. 886 (1984) ........................................................................................ 6

Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.,
    28 F.3d 259 (2d Cir. 1994) ............................................................................ 4

City of Detroit v. Grinnell Corp.,
    495 F.2d 448 (2d Cir. 1974) .......................................................................... 6

Correspondent Servs. Corp. v. JVW Inv. Ltd.,
    No. 99 Civ. 8934 (RWS), 2004 U.S. Dist. LEXIS 19341
    (S.D.N.Y. Sept. 29, 2004), aff'd, 442 F.3d 767 (2d Cir. 2006) .................... 3

Eastway Construction Corp. v. New York,
    637 F. Supp. 558 (E.D.N.Y. 1986) ............................................................ 10

FTSS Korea v. First Technology Safety System, Inc.,
    254 F.R.D. 78 (E.D. Mich. 2008) ............................................................ 3, 5

Fleischer v. Paramount Pictures Corp.,
    329 F.2d 424 (2d Cir. 1964) .......................................................................... 4

International Shipping Co., S.A. v. Hydra Offshore, Inc.,
    675 F. Supp. 146 (S.D.N.Y. 1987), aff'd, 875 F.2d 388 (2d Cir. 1989) ...... 3

New Windsor Volunteer Ambulance Corps., Inc v. Meyers,
    442 F.3d 101 (2d Cir. 2006) .......................................................................... 6

Signorile v. Quaker Oats Co.,
    499 F.2d 142 (7th Cir. 1974) ........................................................................ 4

Solloway v. Ellenbogen,
    121 F.R.D. 29 (S.D.N.Y. 1988) .................................................................... 3

**STATUTES**

CPLR §3123 ........................................................................................................ 9

Fed. R. Civ. P. 11 .............................................................................................. 3

Fed. R. Civ. P. 11 Advisory Committee Note (1993) ...................................... 3

| **STATUTES** | **PAGE(s)** |
| --- | --- |
| Fed. R. Civ. P. 11(B)(2) | 3 |
| Fed. R. Civ. P. 41 | 3, 5 |
| Fed. R. Civ. P. 54(d)(2) | 6 |
| Fed. R. Civ. P. 60(b)(2) | 8 |
| 28 U.S.C. § 1359 | 4, 5 |
| 28 U.S.C. § 1919 | *passim* |
| 28 U.S.C. § 1927 | 1, 10 |

Plaintiff Castillo Grand, LLC ("Castillo") respectfully submits this reply memorandum of law in further support of its motion for reconsideration of the Opinion and Order of the Court dated and filed on December 23, 2010 (the "Order")[1] granting defendant Sheraton Operating Corporation's ("Sheraton") motion for just costs pursuant to 28 U.S.C. § 1919 and denying Castillo's cross-motion for sanctions pursuant to 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

In its opposition to Castillo's motion, Sheraton concedes that attorneys' fees are recoverable under 28 U.S.C. § 1919 upon a "showing of extraordinary circumstances." Far from extraordinary, Castillo's conduct – seeking an extension of existing law prompted by the concern of avoiding waste and to save jurisdiction, which this Court called "well-founded" – was routine and proper. Therefore, Castillo is entitled to reconsideration of the Order's determination that Sheraton is entitled to recover attorneys' fees pursuant to § 1919 because, it is respectfully submitted, the Court did not apply the "extraordinary circumstances" standard in determining the underlying motion.

Further, in light of Sheraton's outright admissions that it has repeatedly disregarded this Court's express admonition that the parties not re-litigate issues that were decided by this Court (including in a recently filed Post-Trial Memorandum), and its ongoing refusal to be placed under oath regarding the circumstances of its feigned eve-of-trial discovery of a diversity defect, Castillo is entitled to reconsideration of the Court's ruling regarding Castillo's entitlement to sanctions. To be clear: Sheraton <u>knowingly</u> harbored a subject matter jurisdictional defect; strategically withheld that information while repeatedly invoking this court's jurisdiction on counterclaims, dozens of court appearances, multiple motions including a fully briefed and argued summary judgment motion, up through and including the scheduling of the trial before this Court. Not once has Sheraton <u>ever</u>

---

[1] A true and correct copy of the Order is annexed Castillo's Memorandum of Law In Support of Motion For Reconsideration as Exhibit A.

denied its behavior in this regard – instead resorting to the double talk and obfuscation that led this

Court to call out Sheraton and its attorneys for "playing hide the ball." As demonstrated herein,

Sheraton blatantly ignored Your Honor's express directive that it would be "unprofessional" to re-

litigate issues previously decided, and set forth the exact same frivolous and failed arguments once

again after having achieved a nearly one year delay of the trial. Because Sheraton concedes its

conduct and cannot deny the delay it willfully caused, we request that the Court also grant

reconsideration of this aspect of the cross-motion.

## ARGUMENT

I. **CASTILLO'S MOTION FOR RECONSIDERATION OF THE PORTION OF THE ORDER AWARDING SHERATON ATTORNEYS' FEES SHOULD BE GRANTED**

A. **Sheraton Offers No "Extraordinary Circumstances" Substantiating An Award Of Attorneys' Fees Under 28 U.S.C. § 1919**

Sheraton concedes, as it must, that a "showing of extraordinary circumstances" is a

prerequisite to the recovery of attorneys' fees as part of a "just costs" award under 28 U.S.C. § 1919.

(See Opp. Br. at p. 6.) However, ignoring the considerable case law defining this standard, Sheraton

then proposes a spectacularly low threshold – anything "out of the usual or regular course or order"

– to meet this requirement. (Id. p. 7.) Although Sheraton's eve-of-trial motion to dismiss a case the

parties spent three years litigating certainly was an "out of the usual" litigation tactic, that is not the

appropriate or proper legal standard for the granting of an award of attorneys' fees under § 1919.

As a review of applicable case law from this District demonstrates, a finding of

"extraordinary circumstances" generally requires a showing that "fraud or trickery [was] practiced

upon the court or other party." See, e.g., Barron's Educ. Series, Inc. v. Hiltzik, N.S., 987 F. Supp.

224, 225 (E.D.N.Y. 1997) (collecting cases). Even the single case relied on by Sheraton in

advocating for a lower threshold for an award of attorneys' fees under 28 U.S.C. § 1919 involves

willfully nefarious behavior exceedingly distinguishable from Castillo's conduct here. See

2

Correspondent Servs. Corp. v. JVW Inv. Ltd., No. 99 Civ. 8934 (RWS), 2004 U.S. Dist. LEXIS

19341 (S.D.N.Y. Sept. 29, 2004), aff'd, 442 F.3d 767 (2d Cir. 2006) (awarding attorneys' fees under

28 U.S.C. § 1919 where plaintiff, with knowledge that subject matter jurisdiction was lacking,

nonetheless obtained an attachment of defendant's assets imposing a severe financial burden on

defendant). Not surprisingly, the balance of the cases cited by Sheraton are inapposite, involving

awards of attorneys' fees pursuant to Fed. R. Civ. P. 11 or 41. See FTSS Korea v. First Tech. Safety

Sys., Inc., 254 F.R.D. 78 (E.D. Mich. 2008) (Rule 41); International Shipping Co., S.A. v. Hydra

Offshore, Inc., 675 F. Supp. 146 (S.D.N.Y. 1987), aff'd, 875 F.2d 388 (2d Cir. 1989) (Rule 11);

Solloway v. Ellenbogen, 121 F.R.D. 29 (S.D.N.Y. 1988) (Rule 11).

Applying the proper, elevated standard to the circumstances of this case, it is evident that an

award of attorneys' fees is not warranted. Most significantly, Castillo's purportedly "extraordinary"

conduct -- seeking to avoid waste and save jurisdiction by correcting an alleged diversity defect and

re-filing the same action before this Court – is patently proper. Castillo, after openly advising the

Court of its intentions and motivations to avoid manifest waste, as well as the Supreme Court

authority on which it intended to rely, sought an extension of existing law. Such advocacy is routine

– the mirror opposite of extraordinary – and thus cannot be the basis for an award of attorneys' fees

under § 1919. Indeed, the ability to make such arguments is a fundamental tenet of our advocacy

system.

Consistent with this basic principle, Fed. R. Civ. P. 11 expressly permits a party to present

"argument[s] for extending, modifying, or reversing existing law…" without the imposition of

sanctions. See Fed. R. Civ. P. 11(b)(2).[2] As interpreted by the Second Circuit, an argument for the

---

[2] In evaluating the merit of such an argument, the Advisory Committee Notes to Rule 11 advise that "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether [Fed. R. Civ. P. 11(b)(2)] has been violated." Fed. R. Civ. P. 11 Advisory Committee Note (1993).

extension or modification of existing law is proper if the pleading, motion, or other paper containing such argument is filed with a belief "formed after reasonable inquiry, that the position espoused is factually supportable and warranted . . . ." See Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994).

Under any measure, it cannot be disputed that Castillo operated under a good faith belief that its re-filing the Second Federal Action[3] before this Court was legitimate and appropriate. It is likewise undeniable that Castillo exercised extreme care in researching the issues supporting its position. Indeed, this Court recognized at oral argument on Sheraton's motion to dismiss the Second Federal Action that Castillo acted legitimately and entirely in good faith in bringing that action. (10/23/09 Tr. at 30:7-10). Therefore, even if Sheraton is awarded "just costs" pursuant to § 1919, such an award cannot include attorneys' fees. Barron's Educ. Series, Inc., 987 F. Supp. at 225 (citing Fleischer v. Paramount Pictures Corp., 329 F.2d 424, 426 (2d Cir. 1964) (counsel fees may be added to a "losing party's bill of costs [only] in the most extraordinary of instances"); Signorile v. Quaker Oats Co., 499 F.2d 142, 146 (7th Cir. 1974) (holding that, absent a showing of extraordinary circumstances, the term "just costs" under § 1919 does not include attorneys' fees).

Sheraton's claimed justifications for such an award of attorneys' fees utterly lack merit. Though Sheraton accuses Castillo of "engaging [in] sham transactions" as part of its supposed scheme to "manipulate[]" its citizenship to create federal jurisdiction, and places undue emphasis on Sheraton's own "warn[ing]" that such "manipulations and modifications" would run afoul of 28 U.S.C. § 1359, Sheraton entirely ignores that Castillo — as described above — acted openly and in a good faith effort to avoid wasted litigation costs which this Court found to be "well-founded."[4] (Ex.

---

[3] All capitalized terms not defined herein shall have the same meaning as set forth in Castillo's Memorandum of Law In Support of Motion For Reconsideration.

[4] A true and correct copy of this Court's Opinion and Order dismissing the Second Federal Action, dated December 9, 2009, is annexed hereto as to Exhibit A.

A at p. 13.) That Sheraton self-servingly warned Castillo that its efforts would not be successful under § 1359 is utterly irrelevant.[5]

Further, Sheraton's baseless suggestion that the fact that the legal work expended seeking dismissal of the Second Federal Action was not of any use in the State Court Action constitutes an extraordinary circumstance also must be rejected. As a case Sheraton itself cited explains, the later utility of such legal work only becomes relevant _after_ a determination has been made on whether attorneys' fees are appropriately recoverable, rather than, as Sheraton would propose, as a circumstance warranting such an award. See FTSS Korea, 254 F.R.D. at 79 (holding that, where an award of attorneys' fees is granted pursuant to Fed. R. Civ. P. 41, such award is limited to the amount of legal work "likely to be wasted").

Accordingly, applying the appropriate legal standard, the Order should have found that because Castillo acted openly and legitimately, in a good faith effort to seek a reasonable extension of current law, Sheraton failed to demonstrate "extraordinary circumstances" warranting an award of attorneys' fees. Accordingly, reconsideration of this legal issue is appropriate and, upon reconsideration, Castillo respectfully requests that the Court deny Sheraton's request for attorneys' fees under § 1919.

### B. Sheraton's Continuing Inability To Justify Its Own Legal Fees Alone Warrants A Hearing Prior To An Award of Attorneys' Fees

Incapable of justifying its patently outrageous billing practices, and thus seeking to avoid a detailed accounting of the amount of time it purports to have spent litigating the Second Federal Action, Sheraton relies on inapposite case law in an effort to persuade the Court that Castillo is not entitled to an evidentiary hearing. Contrary to Sheraton's claims, controlling case law dictates that, upon the request of the party opposing the fee application, and "where facts are disputed, an

---

[5] Or to put it another way, if parties were at risk of sanctions any time that they advanced an argument which opposing counsel thought lacked merit, then parties could never advance any legal arguments at all.

evidentiary hearing is required before a district court determines a proper attorney's fee award." Blum v. Stenson, 465 U.S. 886, 892 n.5 (1984) (citing City of Detroit v. Grinnell Corp., 495 F.2d 448, 472-73 (2d Cir. 1974); see also New Windsor Volunteer Ambulance Corps., Inc v. Meyers, 442 F.3d 101, 116 (2d Cir. 2006) (holding that under Fed. R. Civ. P. 54(d)(2), which governs motions for awards of attorneys' fees that are not an element of the damages to be proven at trial, the court is obliged, at a minimum, to allow adversary submissions upon the request of a party).

As Castillo described in its memorandum of law in opposition to Sheraton's motion for just costs, Sheraton's billing practices are riddled with deficiencies and items in dispute. Accordingly, Castillo requested, consistent with the above law, that should the Court find that Sheraton was entitled to recover attorneys' fees under § 1919, an evidentiary hearing be scheduled to permit Castillo to cross-examine Sheraton's counsel. (Castillo Opp. at 15 n.3.)[6]

The import of such a hearing is underscored by Sheraton's sheer inability to counter Castillo's objections to Sheraton's billing practices. Indeed, in responding to Castillo's explanation of the utterly unreasonable amount of time Sheraton's counsel purportedly dedicated to research in connection with Sheraton's motion to dismiss the Second Federal Action, (Id.), Sheraton states only that "[t]he voluminous record in this case disproves that assertion [that the research time expended was unreasonable]." (Opp. Br. at 13-14.) To the contrary, as Castillo demonstrated, almost half of the cases cited in Sheraton's motion to dismiss the First Federal Action were the same as the cases cited in the motion to dismiss the Second Federal Action, and thus the record itself demonstrates that the time Sheraton's counsel logged to research was obscenely bloated. (Castillo Opp. at 15 n.3.)

Then, seeking to explain away the questionable billing entries of William Brewer, a named partner at the law firm representing Sheraton, Sheraton offers only that, because it only requested a

---

[6] A true and correct copy of Castillo's Memorandum of Law In Opposition To Sheraton's Motion for Just Costs and In Support of Cross-Motion for Sanctions is annexed to Castillo's moving Memorandum of Law In Support of Motion for Reconsideration as Exhibit D.

portion of the fees allegedly incurred ($200,000 of $265,000 in fees allegedly incurred), that one could write off all of Mr. Brewer's time and the Order awarding Sheraton $200,000 in fees would not be affected. This argument, however, ignores that, as Castillo pointed out in its opposition to Sheraton's motion, virtually every billing attorney or staff member engaged in improper billing practices, including using inscrutable task descriptions and engaging in grossly inflationary block billing. (Id.) Therefore, because the legitimacy of all of the billing entries is in question, disregarding Mr. Brewer's time entries fails to resolve the issue.

Since the Order overlooks critical, undisputed facts and legal authorities calling into question Sheraton's alleged attorneys' fees, reconsideration of the Court's ruling on the issue of the reasonableness of Sheraton's legal fees is warranted. Thus, even in the event the Court were to find "extraordinary circumstances" warranting an award of attorneys' fees, the fees sought by Sheraton are inflated beyond any reasonable measure. At a minimum, Castillo should be entitled to a hearing on the reasonableness of Sheraton's counsel's fees and questionable billing practices.

## II. CASTILLO IS ENTITLED TO RECONSIDERATION OF THE COURT'S DENIAL OF ITS CROSS-MOTION FOR SANCTIONS

### A. Sheraton Admits That It Has Engaged In The Very Wasteful And Unprofessional Conduct That This Court Expressly Warned The Parties To Avoid

Flaunting its repeated disregard for the explicit instructions of this Court, in its opposition memorandum Sheraton unabashedly chronicles its efforts to re-litigate matters already decided in the First Federal Action in violation of this Court's express admonition. (Opp. Br. 17-18.) Sheraton admits that, virtually from the very first conference in the State Court Action, Sheraton sought to engage in repetitive discovery and advance arguments previously decided by this Court. (Opp. Br. 17-18.) Indeed, Sheraton's opposition provides a detailed primer of the ways in which Sheraton disregarded this Court's express directive. (Id.)

Sheraton's motivation for disregarding this Court's directive became evident after Sheraton filed its Post-Trial Memorandum in the State Court Action, wherein Sheraton presented the very same exculpatory clause defenses rejected by this Court after extensive briefing and oral argument.[7] Pursuant to Fed. R. Civ. P. 60(b)(2), this newly discovered evidence warrants a reconsideration of Castillo's motion for sanctions and, upon consideration, the granting of Castillo's motion.

Unable to dispute that it knowingly disobeyed this Court's directive, Sheraton resorts instead to a baseless claim that, because Sheraton previously announced its intention to re-litigate issues previously decided by this Court, this evidence is not "newly discovered." However, this argument is premised on flawed logic – Sheraton's expression of an intent to disobey this Court's directive, as contrasted to its actual re-litigation of its exculpatory clause arguments in its Post-Trial Memorandum, are entirely different.

Sheraton's remaining arguments are similarly unavailing. Despite Sheraton's claims, the incontrovertible evidence shows that Castillo at all times was willing to abide by this Court's directive and adopt all of the discovery and legal determinations made by this Court in the First Federal Action to avoid waste. (See, e.g., 12/17/09 Tr. 4:17-23, 7:4-10, 8:12-19.)[8] It was only because of Sheraton's refusal to agree to this proposal that Castillo continued to assert its other causes of action. Indeed, on numerous occasions Justice Scheinkman challenged Sheraton on this precise point, asking why it would be fair for Castillo to abide by this Court's determinations when Sheraton refused. Further, that Castillo conducted limited discovery on Sheraton's new claims alleged for the first time in the State Court Action – consisting of two depositions each lasting less than one hour, as well as narrowly tailored discovery requests – is of no relevance to, and in no way

---

[7] A true and correct copy of Sheraton's Post-Trial Memorandum is annexed Castillo's moving Memorandum of Law In Support of Motion for Reconsideration as Exhibit C.

[8] A true and correct copy of the Conference Transcript before Justice Scheinkman, dated December 17, 2009, is annexed to Sheraton's Opposition Brief as Exhibit 3.

justifies, Sheraton's repeated efforts to re-litigate issues previously decided in the First Federal Action.[9]

Finally, Sheraton cannot seriously dispute that Castillo at all times sought an expedited trial date, and further that Sheraton's wrongful conduct delayed the trial between the parties for nearly one year. (See, e.g., 12/17/09 Tr. 12:19-13:12, 16:15-18.) Though Sheraton points to Castillo's motion to stay the State Court Action during the pendency of the Second Federal Action, Sheraton disingenuously omits that, immediately upon this Court's dismissal of the Second Federal Action, Castillo withdrew its motion for a stay and in its place moved for a trial preference seeking an expedited trial date.

Accordingly, because the evidence demonstrates that Sheraton caused undue delay and waste of party and judicial resources, and because newly discovered evidence in the form of Sheraton's Post-Trial Memorandum filed in the State Court Action further demonstrates Sheraton's bad faith, reconsideration of the Court's ruling on Castillo's cross-motion for sanctions should be granted.

**B.** **Sheraton's Counsel Remains Unwilling To Be Placed Under Oath To Explain The Circumstances Surrounding Its Supposed Eve of Trial Discovery Of Jurisdictional Defects**

Again, despite Castillo's repeated invitations for Sheraton's counsel to be "placed under oath" to rebut Castillo's charges that Sheraton strategically suppressed evidence of a diversity defect, Sheraton's counsel offers nothing but legal argument in opposition to Castillo's claims. Sheraton's counsel's unwillingness to submit an affirmation under oath explaining its supposed "discovery" of the diversity defect on the eve of trial is revealing. That fact, together with the unrebutted evidence set forth in the Bernstein Declaration raising an inference that Sheraton's counsel litigated before this Court for a protracted period and sought summary judgment while strategically withholding

---

[9] Sheraton also notes that Castillo served Requests to Admit. Sheraton fails to recognize that Requests to Admit are not discovery devices under New York's Civil Practice Law and Rules, but rather a trial device intended to obtain a party's admission concerning the authenticity of potential trial exhibits. See CPLR § 3123.

evidence of a diversity jurisdiction defect, (see Bernstein Decl. at ¶¶ 17-27), entitles Castillo, at the very least, to a hearing to determine the scope of Sheraton's knowledge in the months and years before its motion to dismiss. See, e.g., Eastway Constr. Corp. v. New York, 637 F. Supp. 558, 570 (E.D.N.Y. 1986) (finding that where there are disputed issues of fact regarding entitlement to sanctions, an evidentiary hearing is "necessary").

Accordingly, reconsideration of the Court's ruling regarding Castillo's entitlement to sanctions is warranted, and a hearing should be ordered to determine whether sanctions against Sheraton are appropriate.[10]

## CONCLUSION

For the foregoing reasons, Castillo respectfully requests that the Court grant reconsideration of the Order and, upon reconsideration, deny Sheraton's motion for "just" costs under 28 U.S.C. § 1919 in all respects and grant Castillo's motion for sanctions from Sheraton's counsel pursuant to 28 U.S.C. § 1927 in all respects, and that the Court award Castillo such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 18, 2011

PRYOR CASHMAN LLP

By: _____
Todd E. Soloway
tsoloway@pryorcashman.com
Lisa M. Buckley
lbuckley@pryorcashman.com
Joshua D. Bernstein
jdbernstein@pryorcashman.com
Bryan T. Mohler
bmohler@pryorcashman.com
7 Times Square
New York, New York 10036-6569
(212) 421-4100
*Attorneys for Plaintiff Castillo Grand, LLC*

---

[10] For all of the reasons set forth herein, Sheraton's audacious, bad faith request for sanctions pursuant to 28 U.S.C. § 1927 related to this Motion should be rejected.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CASTILLO GRAND LLC,

                          Plaintiff                          09 CV 7197 (RPP)

     - against -

                                                        **OPINION AND ORDER**

SHERATON OPERATING CORPORATION,

                          Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

     This matter comes before the Court on Defendant Sheraton Operating

Corporation's ("Sheraton" or "Defendant") motion to dismiss for lack of subject matter

jurisdiction and Defendant's motion to dismiss for improper venue.  For the reasons

discussed herein, this Court finds it lacks subject matter jurisdiction over this action and

Defendant's motion to dismiss is granted.

## I.  Procedural Background

     On July 21, 2006, Plaintiff Castillo Grand LLC ("Castillo" or "Plaintiff") filed a

complaint against Sheraton (Case No. 06 CV 5526) alleging a variety of claims arising

out of a management contract between Castillo and Sheraton related to the construction,

promotion and management of a luxury hotel in Fort Lauderdale, Florida (the "First

Action").[1]  Since the filing of the First Action, the parties have engaged in extensive

discovery and motion practice.  On July 8, 2009, after nearly three years of litigation, this

Court granted in part and denied in part Sheraton's motion for partial summary judgment.

---

[1]     Only the procedural history necessary to the determination of the instant motion has been recited.
For a fuller description of the procedural history and the facts of the case, see the Court's Opinion and
Order dated July 8, 2009, granting in part and denying in part Sheraton's motion for partial summary
judgment in the First Action.

On August 5, 2009, five weeks before this matter was scheduled to go to trial, Sheraton

moved to dismiss the First Action for lack of subject matter jurisdiction. Federal court

jurisdiction over the First Action was based solely on diversity of citizenship pursuant to

28 U.S.C. § 1332.[2] For diversity purposes, it is undisputed that Sheraton is a citizen of

both Delaware and New York. In its amended complaint dated July 8, 2006 (the "First

Action Complaint"), Castillo described itself as "a Florida limited liability company, with

its principal place of business in Clearwater, Florida." (First Action Complaint ¶ 25.)

For purposes of assessing diversity jurisdiction, an unincorporated entity such as a

partnership or a limited liability company is deemed to be a citizen of all states of which

its partners or members are citizens. See Carden v. Arkoma Assocs., 494 U.S. 185, 195-

96 (1990); Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51-52 (2d

Cir. 2000).

In its motion to dismiss the First Action, Sheraton argued that two indirect, part-

owners of Castillo, Barbara Santangelo ("Santangelo") and Rochester Jacksonville Inc.

("RJI"), were citizens of New York and that therefore complete diversity was lacking.

By letter dated August 7, 2009, Castillo did not oppose Sheraton's motion on the merits.

Instead, counsel for Castillo proposed to cure the alleged diversity jurisdiction infirmity,

re-file a new action between the same parties, alleging the same claims, and then proceed

directly to trial on the previously-set trial date of September 8, 2009. (See August 7,

2009 Letter from Todd E. Soloway, attached to the Declaration of Eric P. Haas dated

September 8, 2009 ("Haas Decl.") as Ex. 26 ("8/7/09 Letter").) In its letter and during a

---

[2]     On August 5, 2009, Sheraton commenced an action against Castillo in New York State Supreme
Court, Westchester County, asserting claims for breach of contract, unjust enrichment, contractual
indemnification, and declaratory relief. Sheraton contends that New York State Supreme Court,
Westchester County, is the only court of appropriate jurisdiction. (See Def. Mem. at 9-10.)

telephone conference with the Court on August 10, 2009, Castillo argued that Santangelo

was a citizen of Florida but conceded that RJI was a New York corporation. (See id.;

Transcript of August 10, 2009 teleconference, Haas Decl. Ex. 1 ("8/10/09 Tr.").) At the

August 10, 2009 teleconference, the Court, based on Castillo's proposed course of action,

did not adjourn the September 8, 2009 trial date. (8/10/09 Tr. at 21:9-10; 22:4-9.) Also

at the August 10, 2009 teleconference, counsel for Sheraton indicated that, based on their

research, any attempt by Castillo to cure the diversity defects would violate 28 U.S.C.

§ 1359. (Id. at 2:19-3:13; 11:4-8.) Counsel for Sheraton further indicated that it would

need an opportunity to take discovery on the transactions Castillo planned to undertake in

order to cure the diversity defects and that Sheraton would likely make a motion to

dismiss any re-filed action, again for lack of subject matter jurisdiction. (Id. at 3:6-13;

10:25-11:8; 21:11-16; 23:12-17.)

By order dated August 13, 2009, the Court dismissed without prejudice the First

Action for lack of subject matter jurisdiction. On August 14, 2009, Castillo commenced

the instant action (Case No. 09 CV 7197) by filing a new complaint against Sheraton

alleging the same claims contained in the First Action Complaint. On August 20, 2009,

the Court issued an order in this action vacating all previously-set dates from the First

Action, including the September 8, 2009 trial date, in light of the fact that the First Action

had been dismissed. Between August 14, 2009 and September 8, 2009, Sheraton

conducted discovery on the issue of subject matter jurisdiction, and on September 8,

2009, Sheraton filed the instant motions to dismiss for lack of subject matter jurisdiction

based on lack of diversity and for improper venue pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure. On September 25, 2009, Castillo filed

its opposition papers, and on October 5, 2009, Sheraton filed its reply papers. The Court heard argument from the parties on October 23, 2009.

## II. Discussion

In its motion, Sheraton argues first that at all times relevant to the First Action and this action, both Santangelo and RJI were citizens of New York. Sheraton further argues that at the time of filing of the First Action, Santangelo and RJI were both entities whose citizenship had to be assessed in order to determine the citizenship of Castillo for diversity purposes. Finally, Sheraton argues that between August 10 and August 14, 2009, Castillo attempted to eliminate the indirect ownership interests of Santangelo and RJI. Because these transactions were undertaken for the sole purpose of creating federal diversity jurisdiction where no such jurisdiction existed before, Sheraton argues that Castillo's reorganization of its citizenship violated 28 U.S.C. § 1359 and this Court therefore lacks subject matter jurisdiction over the instant action.

### A. 28 U.S.C. § 1359

Section 1359, titled "Parties collusively joined or made," states:

> A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court.

28 U.S.C. § 1359. It is apparent from the exhibits submitted as part of Defendant's moving papers and Plaintiff's opposition papers that the sole purpose of Castillo's reorganization between August 10 and August 14, 2009 was to remain in federal court. The record is replete with instances of Castillo admitting that it took affirmative steps in order to cure the alleged diversity defects and then re-file its complaint in the same

4

court.[3] Castillo does not contest this point in its opposition papers.  It is beyond dispute, therefore, that Castillo's reorganization was undertaken in order "to invoke the jurisdiction" of this Court as contemplated by the plain language of § 1359.

Courts in this circuit "construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction." Airlines Reporting Corp. v. S&N Travel, Inc., 58 F.3d 857, 862 (2d Cir. 1995).  See also Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 474-75 (2d Cir. 1976) (construing § 1359 to bar "agreements whose primary aim was to vest the court with a jurisdiction it had not formerly enjoyed." (quoting O'Brien v. AVCO Corp., 425 F.2d 1030, 1034 (2d Cir. 1969))).  In explaining its interpretation of § 1359, the Second Circuit has noted that "there can be no excuse for engulfing the already burdened federal courts with cases involving controversies between citizens of the same state, who seek to invoke federal jurisdiction through sham transactions.  Section 1359 is merely the last of a series of enactments embodying that clear and salutary principle." O'Brien, 425 F.2d at 1033. Indeed, "[s]uch 'manufacture of Federal jurisdiction' was the very thing which Congress intended to prevent when it enacted § 1359 and its predecessors." Prudential Oil, 546 F.2d at 474 (quoting Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 829 (1969)).  The law is clear in this circuit that transactions engineered by a party for the purpose of creating federal diversity jurisdiction are precisely the sort of conduct prohibited by § 1359.

---

[3]     See, e.g., 8/7/09 Letter at 3 ("We are currently in the process of curing the alleged defect in diversity jurisdiction"); 8/10/09 Tr. at 7-8 (discussing intent to "cure" and re-file Castillo's complaint); August 12, 2009 Letter from Todd E. Soloway, Haas Decl. Ex. 2, at 2 ("Castillo proposes to negate any potential diversity problem by eliminating RJI's and Ms. Santangelo's indirect ownership of Castillo and re-filing this exact same action before Your Honor as a 'Related Action.'").

Castillo argues that § 1359 should not apply to the facts of this case for two reasons. First, Castillo asserts that § 1359 has traditionally applied to situations where a non-diverse real party in interest pursues a claim through a diverse proxy and that this Court should hold § 1359 only applicable to those narrow circumstances. Second, Castillo argues that the purpose of reorganizing its citizenship was to avoid three years of wasted litigation costs and that this desire to avoid waste is not improper or collusive as contemplated by § 1359. For the reasons discussed below, the Court finds Castillo's arguments to be without merit.

### 1. Real Party in Interest

Castillo argues that: "If there is a non-diverse person who is the 'real party in interest' to the diverse plaintiff's claims, and who assigned his claims to that plaintiff in order to create a back-door entry to federal court, then § 1359 should apply. If there is no such situation, then there is no improper collusion and § 1359 does not apply." (Pl. Opp'n Mem. at 9.) The latter does not follow from the former. Castillo is correct that the cases upon which Sheraton relies – in particular, <u>Airlines Reporting</u>, <u>Prudential Oil</u> and <u>O'Brien</u> – involved assignments of claims from non-diverse parties to diverse parties and an analysis of who was the real party in interest. Those cases, however, do not suggest that intentional or collusive acts to cure improper subject matter jurisdiction do not violate § 1359. Rather, Castillo's position is flatly contradicted by the plain language of the statute, which prohibits improper or collusive invocation of federal jurisdiction "by assignment *or otherwise*," 18 U.S.C. § 1359 (emphasis added), and the interpretation of that section by the Second Circuit as barring "*any agreement* whose primary aim is to

concoct federal diversity jurisdiction." Airlines Reporting, 58 F.3d at 862 (emphasis added and internal quotations omitted).

Castillo relies on North American Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447 (9th Cir. 1986), for the proposition that, where there was no assignment of claims and a plaintiff brings its own claims in its own name, § 1359 is not implicated. (Pl. Opp'n Mem. at 12.) Castillo's reliance is misplaced because – unlike the instant case – North American Watch did not involve *any* diversity-creating agreement or transaction whatsoever. The defendant in that case argued that the existence of a non-diverse, non-party subsidiary of plaintiff ran afoul of § 1359 and therefore the court lacked subject matter jurisdiction. North Am. Watch, 786 F.2d at 1449. The court held that "[t]here is no merit to appellants' suggestion that North American's corporate structure, which was fixed before the parties entered into any relationship, existed or was created to manufacture diversity jurisdiction." Id. In contrast, Castillo's diversity-creating reorganization took place only in the face of a challenge to subject matter jurisdiction and was undertaken for the admitted purpose of trying to remain in federal court. (See 8/7/09 Letter at 1 ("The last thing that Castillo wants to do is delay the trial or waste time litigating alleged procedural problems that can be readily and immediately cured.").)

Castillo further argues that Kramer v. Caribbean Mills, Inc., 394 U.S. 823 (1969), supports its interpretation of § 1359. In Kramer, the holding of the Supreme Court was that an assignment of a claim to a diverse party, where the assignee contracted to return 95% of any recovery to the non-diverse transferor, did violate § 1359. Kramer, 394 U.S. at 824-25. Castillo relies, however, on one footnote in the Kramer opinion which reads, in relevant part: "we have no occasion to re-examine the cases in which this Court has

held that where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is not 'improperly or collusively made,' regardless of the transferor's motive." Id. at 828 n.9.  Castillo argues that, because, after the reorganization, Santangelo and RJI retained no interest in the subject matter of the litigation, the transactions were absolute with respect to Santangelo and RJI and therefore, footnote 9 of Kramer supports the position that the Castillo reorganization was not improper or collusive regardless of the purpose of those transactions.  (Pl. Opp'n Mem. at 16-18.)  Castillo's reliance on the footnote's language is misplaced.  First, the footnote speaks of assignments of claims but nothing in the Kramer opinion or footnote suggests that § 1359 does not relate to the transfer of an ownership interest or any other diversity-creating agreement or transfer.  Second, as Castillo itself repeatedly points out, the instant case does not involve the assignment or transfer of claims.  (See Pl. Opp'n Mem. at 9, 11-13.)  Instead, it involves the reorganization of the ownership structure of an LLC with the intent of changing the LLC's citizenship for diversity purposes.[4] Kramer is therefore factually inapposite.  Finally, the Supreme Court's footnote merely notes that it does not revisit prior decisions.  Each of the four cases cited as examples of such prior decisions pre-date the enactment of 18 U.S.C. § 1359 in 1948 and are therefore of limited relevance to the issue before this Court.[5]

---

[4]     Castillo purchased Santangelo's membership interest in the managing member of Castillo Grand LLC by granting her a promissory note in the amount of $832,179.06 plus 10% interest per annum, with a maturity date on August 10, 2015.  (Pl. Opp'n Mem. at 6.)  RJI, previously a limited partner of Queen's Harbor Yacht & Country Club, Ltd. ("Queen's Harbor"), which is in turn owns a membership interest in the managing member of Castillo Grand LLC, formally disassociated itself from Queen's Harbor through a "Joint Unanimous Written Consent of the Directors and Sole Shareholder of Rochester Jacksonville, Inc." (Pl. Opp'n Mem. at 7.)  Castillo points to no consideration given to RJI as consideration for its partnership interest and Sheraton argues that none was given.  (Def. Mem. at 12.)

[5]     The predecessor statute to § 1359 reads, in relevant part:
        Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover

Castillo also argues that Santangelo and RJI now have no interest in Castillo's claims and have never had any control over this litigation. (Pl. Opp'n Mem. at 11-12, 16-18.) It is undisputed that Santangelo and RJI are not – and have never been – "real parties in interest" to this litigation. In other words, Santangelo and RJI have never been "person[s] entitled under the substantive law to enforce the right sued upon and who generally, but not necessarily, benefit[] from the action's final outcome." Black's Law Dictionary (8th ed. 2004). Furthermore, this argument misses the point because it is based on Castillo's faulty premise that § 1359 applies only to situations involving a "real party in interest" as opposed to any agreements designed to manufacture federal diversity jurisdiction. For the reasons discussed above, Castillo's narrow reading of § 1359 is contrary to the broad language of Second Circuit precedent and contrary to the plain language of the statute.

### 2. Avoidance of Waste

Castillo also argues that its only purpose in reorganizing its citizenship was to avoid wasting the litigation costs incurred over the last three years and submits that avoiding waste can never be an improper motive. (Pl. Opp'n Mem. at 18-23.) Castillo relies on three Supreme Court cases that it claims have endorsed the practice of curing a minor jurisdictional defect after filing in order to maintain federal court jurisdiction after years of litigation.

---

thereon if no assignment had been made, except in cases of promissory notes negotiable by the law-merchant and bills of exchange.

Jurisdiction and Removal Act of 1875, sec. 1; see also Cross v. Allen, 141 U.S. 528, 533 (1891). Because the predecessor statute only contemplated assignments and did not contain the language "by assignment or otherwise" currently contained in § 1359, Castillo's reliance on the language of footnote 9 in Kramer and the cases cited therein is misplaced.

In Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989), an Illinois corporation sued a Venezuelan corporation, four Venezuelan citizens and a United States citizen domiciled in Venezuela (whose presence spoiled complete diversity). Newman-Green, 490 U.S. at 828. The Supreme Court held that when a diversity challenge was first raised on appeal, an appellate court may dismiss a dispensable party whose presence spoils diversity jurisdiction, thereby preserving the court's subject matter jurisdiction over the action. Id. at 827, 837-38. In doing so, the Supreme Court noted that by allowing an appellate court to dismiss a non-diverse dispensable party, the remaining parties would avoid the waste of re-filing the same action in district court against all defendants except the diversity-spoiler. Id. at 837.

Later, in Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996), the Supreme Court upheld a jury verdict in a case where complete diversity was lacking at the time of removal to federal court, but the non-diverse party was no longer a party by the time the case went to trial. In that case, a Kentucky citizen sued two corporations, one of which was also a Kentucky citizen. Caterpillar, 519 U.S. at 64-65. At the time of removal, the district court erroneously denied a motion to remand. Id. at 66, 70. On appeal, the court of appeals held that the district court's error in denying the motion to remand made it necessary to vacate the judgment entered by the district court. Id. at 67. The Supreme Court reversed, noting that "[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law under the regime of Erie R. Co. v. Tompkins, considerations of finality, efficiency, and economy become overwhelming." Id. at 75 (citation omitted).

10

Castillo is correct that in <u>Newman-Green</u> and <u>Caterpillar</u> the Supreme Court expressed concern over waste and that in certain circumstances, such concerns over judicial resources and the importance of finality may overcome "hypertechnical jurisdictional purity." <u>See</u> <u>Newman-Green</u>, 490 U.S. at 837.  But those cases involve important differences from the instant case.  First, both <u>Newman-Green</u> and <u>Caterpillar</u> involved a party being dropped from the litigation after judgment.  In those cases, certain non-diverse parties spoiled complete diversity *for other parties*.  There was no question that once the jurisdiction-spoilers were removed from the litigation – either by operation of settlement or court action – complete diversity existed between the remaining parties. In the instant case, there is only one plaintiff and one defendant.  It is Castillo – the sole plaintiff – whose citizenship is at issue.  Therefore, there is no dispensable, non-diverse party that could be dropped in order to preserve diversity jurisdiction as the court did in <u>Newman-Green</u>.  Further, neither <u>Newman-Green</u> nor <u>Caterpillar</u> involved a party taking affirmative steps to create diversity jurisdiction where no such jurisdiction existed before. As a result, neither case implicated 28 U.S.C. § 1359.  There is no precedent or authority in <u>Newman-Green</u> and <u>Caterpillar</u> for a district court to go so far as to apply a general policy of avoiding waste, and thus excuse the specific practice of affirmatively "curing" diversity defects in the face of a subject matter jurisdiction challenge, which would otherwise run afoul of § 1359.

Citing <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>, 541 U.S. 567 (2004), Castillo argues that the Supreme Court has endorsed Castillo's decision to re-file this action.  (Pl. Opp'n Mem. at 20-23.)  Castillo misstates the holding of the <u>Grupo</u> case, which instead supports the decision reached herein.  In <u>Grupo</u>, a partnership, having the citizenship of

11

each of its constituent members, sued a Mexican corporation. <u>Grupo</u>, 541 U.S. at 568-69.

After a jury verdict in favor of plaintiff Atlas Global Group, L.P., defendant Grupo

Dataflux moved to dismiss for lack of subject matter jurisdiction. At the time the

complaint was filed, Atlas Global's partnership included two Mexican citizens as partners

and therefore, complete diversity was lacking. <u>Id.</u> at 569. The two non-diverse partners

had left the partnership a month prior to the trial. The Supreme Court nonetheless

declined to extend <u>Newman-Green</u> and <u>Caterpillar</u> to the facts of <u>Grupo</u> and held that

dismissal was necessary. <u>Id.</u> at 582. In dismissing plaintiff's case, the Supreme Court

explicitly distinguished the prior cases: "this is not a case like *Caterpillar* or *Newman-*

*Green* in which party lineup changes simply trimmed the litigation down to an ever-

present core that met the statutory requirement. Rather, this is a case in which a single

party changed its citizenship by changing its internal composition." <u>Id.</u> at 579-80

(internal quotations omitted).

   Castillo argues that both the majority and dissent in <u>Grupo</u> acknowledged that the

result of the Court's ruling would be for the plaintiff to simply re-file the same action in

the same district court. <u>See</u> <u>Id.</u> at 581 ("even if the parties run the case through complete

'relitigation in the very same District Court in which it was first filed in 1997, the 'waste'

will not be great. Having been through three years of discovery and pretrial motions in

the current case, the parties would most likely proceed promptly to trial."); <u>Id.</u> at 595

("Atlas can be expected 'simply to refile in the District Court' and rerun the

proceedings") (Ginsberg, J., dissenting) (quoting <u>Newman-Green</u>, 490 U.S. at 837).

Castillo views this language as an endorsement of the steps it undertook in reconstituting

its citizenship and re-filing this action. (Pl. Opp'n Mem. at 20.) Castillo reads this

12

language in the <u>Grupo</u> opinions too broadly.  The opinion of the Court merely noted that there would be no significant waste if the plaintiff in <u>Grupo</u> re-filed that action.  In <u>Grupo</u>, however, § 1359 was not an issue.  For undisclosed reasons, the non-diverse members of the plaintiff partnership had left the partnership prior to the trial and prior to the diversity jurisdiction challenge being raised.  Section 1359 was in no way implicated because there was no suggestion that the non-diverse partners were dropped in order to create federal subject matter jurisdiction.  For that reason alone, the <u>Grupo</u> case is inapplicable to the case at bar.

In short, while the Supreme Court in <u>Grupo</u> may have "endorsed" re-filing a case after dismissal for lack of diversity jurisdiction when – as was the case in <u>Grupo</u> – no other bar to diversity jurisdiction exists, the <u>Grupo</u> case in no way "endorses" Castillo's deliberate efforts to reconstitute its citizenship for the sole purpose of creating federal subject matter jurisdiction.  Castillo's actions have violated 28 U.S.C. § 1359 and nothing in the cases relied on by Castillo compels a contrary conclusion.

Notwithstanding the conclusion that the complaint must be dismissed, Castillo's concerns about wasted litigation costs are well-founded.  This case is trial-ready.  There is no reason the discovery taken to date should not be adopted – indeed, no reason it should not be *sufficient* – in the related state court action based on the same underlying claims as those alleged in this complaint.  It would be extremely wasteful and unprofessional for the parties to re-litigate issues that have already been decided in this Court over the last three years.